In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2800

JO WHITLOCK and JESSE WHITLOCK,

*Plaintiffs-Appellants,*

*v.*

SHAWN A. BROWN, individually as an Officer
for the Indiana Department of Natural Resources,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division at Lafayette.
No. 4:07-CV-004—**Allen Sharp**, *Judge.*

ARGUED FEBRUARY 9, 2009—DECIDED FEBRUARY 24, 2010

Before POSNER and SYKES, *Circuit Judges*, and DOW,
*District Judge.**

SYKES, *Circuit Judge.* Jo and Jesse Whitlock were
camping at the Indiana Dunes State Park and found

---

* The Honorable Robert M. Dow, Jr., United States District
Judge for the Northern District of Illinois, sitting by designation.

several bags and other items of property that looked as if they had been left behind at another campsite. They put the items in their truck, intending to turn them in to the park office. They then left the campground to run errands and forgot the bags were in their truck. By the time they returned a few hours later, the owner of the bags had reported them stolen. When the Whitlocks went to the park office to turn in the property, they were accused of theft.

Officer Shawn Brown of the Indiana Department of Natural Resources ("DNR") interviewed the couple. They told him they had picked up the property intending to turn it in at the park office but simply forgot. Jo Whitlock added that she decided to take the unattended bags because she was afraid "some corrupt DNR employee" would steal the absent camper's belongings. This comment was gratuitous—and foolish, too, under the circumstances. Brown thought there was probable cause for a conversion charge and applied for an arrest warrant. The Whitlocks were charged with conversion and the warrant was issued. They were arrested and spent four days in jail before being released on bond. The charges against them were later dropped.

The Whitlocks sued Brown, claiming he violated their Fourth Amendment rights by omitting exculpatory facts from his warrant application. The district court entered summary judgment for the officer, holding that he had violated the Whitlocks' rights but was nevertheless entitled to qualified immunity because a reasonable officer would have believed there was probable cause

to arrest the couple for conversion. The Whitlocks appealed.

We affirm. The district court was right to apply qualified immunity, but its analysis took a wrong turn. The precise constitutional question in this case is not whether there was probable cause for the arrest but whether Brown intentionally or recklessly withheld material information from his warrant application. As such, the proper focus of the qualified-immunity inquiry is whether it would have been clear to a reasonable officer that the information allegedly omitted was material to the probable-cause determination. Under *Pearson v. Callahan*, 129 S. Ct. 808 (2009), we are permitted to skip directly to the second question, and we do so here. Although it is clearly established Fourth Amendment law that an officer may not intentionally or recklessly withhold material information from a warrant application, it is not clear under Indiana law that the information Brown allegedly withheld was material to the probable-cause determination for a charge of criminal conversion. Brown is therefore entitled to qualified immunity.

## I. Background

Jo and Jesse Whitlock and their daughter went camping at the Indiana Dunes State Park during the July Fourth holiday week in 2005. On the morning of July 8, they were scavenging for firewood and came across several bags and other items of property at an apparently deserted campsite. They asked Dianne Miranda, a neighboring

camper, whether anyone was using the site; she said she had not seen anyone there all morning. The Whitlocks picked up the bags and other items, put them in their truck, and told Miranda they would turn the property in to park authorities. (The park brochure instructed campers to report lost or found articles to the park office.) They then got into their truck to go shopping at an area mall. On their way out of the park, Jo Whitlock got into an argument with her daughter and forgot about the bags. The Whitlocks realized their mistake when they arrived at the mall but decided to finish their shopping rather than return to the park immediately. Several hours later, the Whitlocks returned to the park and went directly to their campsite. Jo Whitlock searched the bags and found a wallet containing Neil Kohlhoff's driver's license. She called "information" to get Kohlhoff's phone number, left a voicemail letting him know they were taking his bags to the park office, and provided her name and phone number so Kohlhoff could call her.

While the Whitlocks were shopping, however, Kohlhoff had returned to his campsite, found his bags missing, and reported them stolen. Park Security Officer Victor Santiago began an investigation. He spoke to Miranda, who related her earlier conversation with the Whitlocks. When the Whitlocks finally turned the bags in at the park office, the attendant on duty accused them of theft. Officer Santiago interviewed Jo Whitlock; she explained why they had picked up the bags and why they did not immediately return them to the park office. DNR Conservation Officer Shawn Brown soon arrived and took over the investigation. Brown asked Jo Whitlock to repeat

her story several times. She explained that she forgot about the bags because she was arguing with her daughter as the family left the park to go to the mall. She also told the officer that she decided to take possession of the bags because she was afraid that "some corrupt DNR employee" would steal them and felt she had to "protect them from corrupt DNR employees." After taking the Whitlocks' statements, Brown called Kohlhoff to verify that he had received a voicemail from Jo Whitlock and also confirmed that all of Kohlhoff's belongings were returned.

Two days later, Brown prepared a case report describing the incident. The report contained the details of his investigation but did not include Jo Whitlock's explanation for why she and her husband forgot to stop at the park office on their way to the mall. Brown also filled out a standard form "Affidavit for Probable Cause" asserting that there was probable cause to charge the Whitlocks with criminal conversion. The probable-cause affidavit was quite sparse. Beyond identifying the Whitlocks, Kohlhoff, and the date and time of the offense, the affidavit stated only that the Whitlocks had committed a criminal conversion by taking Kohlhoff's property without permission and "keeping such property for several hours, causing time and monetary loss." Brown sent his affidavit to the Porter County prosecutor's office seeking a warrant for the Whitlocks' arrest. He testified in deposition that he also attached his more detailed case report and sent that to the prosecutor as well. This is a point of contention between the parties, however; the Whitlocks maintain that Brown withheld the case report from the prosecutor.

The Whitlocks were charged with conversion in violation of § 35-43-4-3 of the *Indiana Code* and an arrest warrant was issued. About a month later, they were pulled over for a license-plate violation and arrested on the conversion warrant. They spent four days in jail before being released on bond. The Porter County prosecutor quickly had a change of heart and dropped the charges. Due to file-storage constraints, the prosecutor's file was destroyed sometime in 2006.

The Whitlocks sued Brown under 42 U.S.C. § 1983 alleging a violation of their Fourth and Fourteenth Amendment rights. More specifically, they claimed Brown intentionally withheld exculpatory information from his warrant application. The parties filed cross-motions for summary judgment, and the district court entered judgment in Brown's favor. The judge held that Brown violated the Whitlocks' Fourth Amendment rights by withholding his case report from the prosecutor. The judge concluded, however, that the officer was entitled to qualified immunity because "a reasonable officer could have believed that there existed probable cause to arrest the Whitlocks for [c]onversion." The Whitlocks appealed.

## II. Discussion

The Whitlocks claim that Brown violated their Fourth Amendment rights by intentionally or recklessly withholding exculpatory facts that would have influenced the warrant-issuing judge's probable-cause finding. *See Franks v. Delaware*, 438 U.S. 154 (1978). Brown disputes

this and also argues he is entitled to qualified immunity. Qualified immunity protects police officers from suit to the extent that their actions "could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). Deciding a claim of qualified immunity generally involves two inquiries: (1) has the plaintiff alleged facts that, if proved, would establish a constitutional violation; and (2) would a reasonable officer have known his actions were unconstitutional in light of clearly established law? *See, e.g.*, *Saucier v. Katz*, 533 U.S. 194 (2001). Under *Saucier* these questions had to be considered sequentially, but *Pearson* has relaxed that protocol. 129 S. Ct. at 818 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances . . . ."). We are now permitted to sidestep the constitutional question and move directly to the question whether the law was clearly established at the time of the alleged violation. *Id*. We find it appropriate to do so here, but will begin by sketching the contours of the alleged constitutional violation.

Although a plaintiff generally cannot base a Fourth Amendment claim on an arrest made pursuant to a valid warrant, in this case the Whitlocks have challenged the truthfulness of the information relied on to establish probable cause for the issuance of the warrant. *See Franks*, 438 U.S. at 171. Although we presume the validity of a warrant and the information offered to support it, this presumption is premised on an "assumption . . . that there

will be a *truthful* showing" of probable cause. *Id.* at 164-65 (emphasis in original). Accordingly, the presumption may give way on a showing that the officer who sought the warrant "knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer, and that the false statements were necessary to the judicial officer['s] determination[] that probable cause existed for the arrest[]." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 742-43 (7th Cir. 2003) (citing *Franks*, 438 U.S. at 155-56). The presumption may also be overcome by evidence showing that the officer intentionally or recklessly withheld material facts from the warrant-issuing judge. *See United States v. Sims*, 551 F.3d 640, 645 (7th Cir. 2008) (citing *United States v. Williams*, 737 F.2d 594, 604 (7th Cir. 1984) ("[T]he law allows a challenge . . . on the ground that material facts were omitted and that the omission was made intentionally or with reckless disregard for the truth.")).

The Whitlocks' claim hinges on omissions, not affirmative false statements. They maintain that Brown intentionally or recklessly withheld material exculpatory information (his case report) from the information he submitted to the prosecutor for the warrant application. The materiality of an omitted or misrepresented fact depends on its relative importance to the evaluation of probable cause; an omitted fact is material if its inclusion would have negated probable cause. *See, e.g.*, *Williams*, 737 F.2d at 604 ("[T]he omitted fact must be material—that is, if the fact were included, the affidavit would not support a finding of probable cause."). One way of approaching the materiality question is to ask

"whether a hypothetical affidavit that included the omitted material would still establish probable cause." *United States v. Robinson*, 546 F.3d 884, 888 (7th Cir. 2008) (citing *United States v. Harris*, 464 F.3d 733, 737 (7th Cir. 2006)). In making this determination, we keep in mind that probable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred. *See, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983).

Before we address materiality, however, there is a threshold dispute about what information Brown sent to the prosecutor in the first place. Brown testified in his deposition that he forwarded both his bare-bones probable-cause affidavit *and* his more detailed case report to the prosecutor's office. The Whitlocks contend that Brown forwarded only the affidavit and intentionally withheld the case report. The difference between the two versions is significant to the materiality question. The case report described the underlying investigation in detail. It included the fact that the Whitlocks had returned Kohlhoff's belongings intact and the fact that the Whitlocks had left Kohlhoff a phone message letting him know where he could retrieve his property. The only information missing from the report was the Whitlocks' explanation for why they did not immediately turn in the bags to the park office on their way out of the park. The affidavit, in contrast, was bereft of facts supporting probable cause; it merely recited the elements of the offense and provided basic identifying

information about the suspects and the victim. If only the affidavit was submitted to the warrant-issuing judge, we doubt that probable cause could have been established.

The district court concluded that the summary-judgment record supported the Whitlocks' contention that Brown did not submit his case report to the prosecutor's office. The judge noted first that the Porter County court file did not contain a copy of Brown's report and that the prosecutor's file had been destroyed. The judge then rejected Brown's deposition testimony as "self-serving statements [that] are not sufficient to carry his evidentiary burden." This was error. "Self-serving" deposition testimony *may* satisfy a party's evidentiary burden on summary judgment. *See Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003)*. Payne* explained that the sufficiency of a "self-serving" statement depends on whether the statement is based on personal knowledge and whether it is grounded in observation as opposed to mere speculation. Brown's testimony that he provided his case report to the prosecutor easily passes this test. He was not speculating and his testimony was based on his personal knowledge.

The Whitlocks, on the other hand, are unable to refute Brown's testimony on this point. First, they affirmatively alleged in their complaint that Brown sent his case report to the prosecutor: "Defendant Shawn Brown completed a supplemental case report which he attached to a probable cause affidavit . . . ." The Whitlocks never amended the complaint; indeed, it was not until

their motion for summary judgment that they first suggested that Brown had not attached the report to the probable-cause affidavit. We need not decide whether the Whitlocks should be bound by the contrary allegation in their complaint. *See Murray v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996) ("A judicial admission trumps evidence. This is the basis of the principle that a plaintiff can plead himself out of court." (internal citation omitted)); *Esmail v. Macrane*, 53 F.3d 176, 179 (7th Cir. 1995). There is no *evidence* that Brown withheld his case report from the prosecutor; the Whitlocks' argument is based entirely on inference. That is, they suggest that we infer, as the district court apparently did, that Brown withheld his case report from the prosecutor because there was no copy of it in the court file.

Under the circumstances here, this inference is unreasonable. Prosecutors—not police officers—are responsible for submitting documentary evidence to the court, and this ordinarily occurs during the course of a motion hearing or trial. The charges against the Whitlocks were dropped early on in the case, so there was no reason for the prosecutor to file Brown's case report with the court. For what it's worth, we note as well that when a copy of the case report was marked as an exhibit during Brown's deposition, the Whitlocks' counsel stated for the record that he had gotten it from the Porter County prosecutor's office. He wasn't testifying, of course, and it's unclear when the attorney obtained the copy (the parties agree that the prosecutor's file was destroyed sometime in 2006). The material point is that the Whitlocks have no evidence—nor any reasonable infer-

ence from the evidence—that Brown withheld his case report from the prosecutor. It's pure speculation.

This conclusion does not end our inquiry. The case report itself contained an omission: Brown did not include the Whitlocks' innocent explanation for why they left the park with Kohlhoff's bags. This requires us to decide whether this information was material to the warrant-issuing judge's probable-cause determination. Indiana's criminal-conversion statute provides that a "person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion." IND. CODE § 35-43-4-3. Control over property is "unauthorized" in eight statutorily specified situations. One is applicable here: Control is "unauthorized" if it is exerted "without the other person's consent [or] in a manner or to an extent other than that to which the other person has consented." *Id.* § 35-43-4-1(b); *Taylor v. State*, 445 N.E.2d 1025, 1027 (Ind. Ct. App. 1983). The statute requires that the offender act "knowingly or intentionally," *see Midland-Guardian Co. v. United Consumers Club, Inc.*, 499 N.E.2d 792, 798 (Ind. Ct. App. 1986) (observing that the State must prove "not only that [defendant] exerted unauthorized control over . . . property, but also that [defendant] was aware of a high probability that this control was unauthorized"), and a defendant's reasonable belief that he controlled or continued to control property with the owner's consent will defeat this element of conversion, *see, e.g.*, *Manzon v. Stant Corp.*, 138 F. Supp. 2d 1110, 1116-17 (S.D. Ind. 2001). The statute does not require that the defendant intend to permanently deprive the owner of his property. *See Bennett v. State*, 871 N.E.2d 316, 322 (Ind. Ct. App. 2007).

The materiality of the Whitlocks' innocent explanation depends on how Indiana would address the issue of owner's consent in cases involving lost or mislaid property. Perhaps an Indiana court would hold that finders of lost property have implied consent from the owner to exert control for the limited purpose of returning it. Applying the law with this judicial gloss, Brown's failure to include the Whitlocks' innocent explanation in his case report may well have been a material omission. The Whitlocks' explanation would support a conclusion that they did not exercise "unauthorized" control over the bags; under a doctrine of implied consent, Kohlhoff would have consented to the Whitlocks' control over his unattended property for the purpose of taking it to the park office for safekeeping. On the other hand, because the Whitlocks kept Kohlhoff's belongings in their car for several hours, they might have exceeded the scope of any implied consent. But their explanation that they simply forgot about the bags in the midst of a heated argument sheds further light on this question. That the Whitlocks called Kohlhoff and then returned the bags intact also supports an exculpatory interpretation of their conduct.

In the end, however, any consideration of implied consent is academic. The Whitlocks have not directed us to any Indiana cases purporting to establish an implied-consent defense to a charge of criminal conversion, either as a general matter or more specifically where lost or mislaid property is involved. Nor have we found any ourselves. Given the breadth of Indiana's criminal-conversion statute and the apparent absence of an implied-

consent defense, the Whitlocks' excuse was irrelevant to the probable-cause determination—or at least of such questionable relevance that Brown is entitled to qualified immunity. At best, Indiana law is undeveloped in this area.

Qualified immunity tolerates reasonable mistakes regarding probable cause. *See Malley v. Briggs*, 475 U.S. 335, 343 (1986). Under the circumstances here, a reasonable officer would not have known one way or the other whether the Whitlocks' explanation for their conduct was material to the probable-cause determination for criminal conversion under Indiana law.[1] Ac-

---

[1] Given the breadth of Indiana's conversion statute and the undeveloped state of its law on implied consent, we could just as easily conclude that Brown did not act with the required mental state to violate the Whitlocks' constitutional rights. An officer violates the Fourth Amendment if he omits facts with the intent to deceive or with a reckless disregard for whether the warrant-issuing judge would be deceived. *See United States v. Awadallah*, 349 F.3d 42, 67-68 (2d Cir. 2003)*; United States v. Colkley*, 899 F.2d 297, 300-01 (4th Cir. 1990). That is, the officer must have "failed to inform the judicial officer of facts [he] knew would negate probable cause." *Beauchamp*, 320 F.3d at 743. Alternatively, reckless disregard may be inferred if the omitted facts were "clearly critical" to a probable-cause determination. *See, e.g.*, *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991). As we have explained, it is unclear under Indiana law whether the Whitlocks' innocent explanation would have made any difference to the probable-cause determination. Under these circumstances, Brown cannot have known whether the

(continued...)

cordingly, we come to the same conclusion as the district court, albeit by a somewhat different analysis. Brown is entitled to qualified immunity. The judgment of the district court is AFFIRMED.

---

[1] (...continued)
omitted explanation was "clearly critical" to the probable-cause determination, much less whether it would negate probable cause.

---