In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2730

RYAN LEAVER,

*Plaintiff-Appellant,*

*v.*

GARY SHORTESS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 14-C-224 — **William C. Griesbach**, *Chief Judge.*

ARGUED JANUARY 7, 2016 — DECIDED DECEMBER 21, 2016

Before EASTERBROOK, MANION, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Ryan Leaver was arrested in Montana on a Wisconsin warrant for theft by lessee after he failed to return a rental car to Hertz Rent-A-Car in Appleton, Wisconsin. He spent more than two months in a Montana jail before being extradited to Wisconsin. The theft charge was eventually dropped.

Leaver then filed this suit under 42 U.S.C. § 1983 alleging that the investigating officer, Sergeant Gary Shortess of the Outagamie County Sheriff's Department, intentionally or recklessly omitted certain exculpatory information from his police reports that would have defeated probable cause for the charge and accompanying warrant. The district court granted summary judgment for Shortess.

We affirm. No evidence suggests that Shortess was personally aware of the information Leaver claims was wrongly omitted from the police reports. And even if he *was* aware of it, qualified immunity applies. It's not clear that the information would have negated probable cause.

## I. Background

The saga of Leaver's arrest and extradition begins in August 2010 in Appleton, Wisconsin, where Leaver was then living in a motel. On August 2 Leaver's parked car was struck by a driver who was insured by West Bend Mutual Insurance Company. West Bend covered Leaver's loss and agreed to pay for a rental car from Hertz. That same day Leaver went to Hertz's Appleton office, signed a rental agreement, loaded all his belongings into a rented 2010 Toyota Camry, and set off westward, leaving the state. He wound up in Montana. There he stayed.

The rental contract, however, provided that the Camry was due back to Hertz Appleton on August 12. At Leaver's request, and with West Bend's consent, Hertz extended the return date to August 16. That date came and went, but Leaver did not return the car. When he still hadn't returned the car by August 18, Hertz reported it stolen.

Deputy John Drews of the Outagamie County Sheriff's Department took the initial theft report from Hertz. He learned that Leaver had designated Sam Cartier, his roommate in Appleton, as his contact person. Drews contacted Cartier, who said he had last spoken to Leaver on August 9 or 10. Cartier also explained that Leaver had packed all his belongings in the rental car and was possibly headed for California. Cartier gave Drews the last contact information he had for Leaver—a phone number for a Motel 6 in Montana. Drews called the number but Leaver had already checked out. With no further leads on either Leaver or the car, Drews directed the communications center in the Outagamie County Sheriff's Department to enter the car into the stolen-vehicle registry and send an alert to the Montana Highway Patrol to be on the lookout for the missing Camry.

On September 10 Sergeant Shortess picked up the investigative trail when the Sheriff's Department received a teletype that the stolen Camry had been located, undamaged, in Montana. Shortess reviewed Drews's report and the statement he had taken from the complaining witness at Hertz Appleton. He also looked at the rental agreement, which showed that Leaver had a Michigan driver's license. Shortess called the Michigan State Police looking for contact information for Leaver or anything else that might assist in locating him or a family member. This inquiry turned up nothing. Based on what he then knew, Shortess concluded that he had enough to refer the matter to the Outagamie County District Attorney for a theft charge. He prepared a report to that effect, listing that day's date—September 10, 2010—as the date the car was recovered in Montana.

The matter stalled for six months. Then on March 16, 2011, an Outagamie County Assistant District Attorney filed a criminal complaint charging Leaver with theft by lessee. *See* WIS. STAT. § 943.20(1)(e). An arrest warrant was issued that same day, though many weeks would pass before Leaver was located and arrested.

Leaver maintains that he was entitled to keep the Camry for up to 62 days and return it to any Hertz location in the country. He points to the following clause in the rental agreement: "This vehicle must be returned to Appleton, WI on 08/12/10 at 16:42 or a higher rate and/or inter city fee will apply. Minimum keep: 1 rental day. Maximum keep: 62 days @26.99/day." But a separate section entitled "Return" also states: "You must return the car to Hertz by the due date specified on the rental record, or sooner if demanded by Hertz." Adding to the confusion, the agreement also provides that "[i]n no event" is the renter allowed to keep the car "for more than thirty (30) days."

Leaver claims that he returned the Camry to the parking lot at a Hertz location in Belgrade, Montana, on August 26, 2010. He also says that he called Hertz's national number and got oral permission to return the car there, though nothing corroborates that claim.

On April 9, 2011—after the criminal complaint was filed and the warrant was issued—Leaver wrote to Outagamie County Assistant District Attorney Patrick Taylor informing him that he had returned the Camry to Hertz in Belgrade, Montana. He accused Hertz of insurance fraud and suggested that the prosecutor contact "Matt" at Hertz Belgrade and Katherine Horton at Hertz's toll-free national number, both of whom (he said) would confirm his story. On May 12 ADA

Taylor sent Shortess a memo directing him to follow up with the people Leaver identified in his letter.

Shortess did not do so, but he did investigate further in Appleton. He contacted James Foytik, the manager at Hertz Appleton, who told him that the Camry wasn't a "one-way rental" (as Leaver's letter claimed) and confirmed that Leaver had to return the car to Hertz Appleton by August 16. Foytik also told Shortess that Hertz had placed Leaver on a nationwide "do not rent" list based on his failure to return the Camry. Shortess then contacted the corporate security manager for West Bend Insurance, who likewise confirmed that the rental agreement was not a one-way rental. After discussing the case with another sergeant and the prosecutor, Shortess filed a supplemental report memorializing this additional investigation and concluding that nothing in Leaver's letter called into question the factual basis for the theft charge.

On May 27, 2011, Leaver was arrested in Bozeman, Montana. He remained in jail until August 4, when he was extradited to Wisconsin. The next day he was brought before a court commissioner in Outagamie County Circuit Court for an initial appearance. Leaver's lawyer moved to dismiss the case, arguing that the rental contract was vague about when and where the car needed to be returned. He also told the court commissioner that Leaver had returned the car to the Hertz lot in Belgrade, Montana, and pointedly noted that the prosecutor had failed to mention that the car was recovered there. The court commissioner denied the motion, finding probable cause for the crime of theft by lessee in violation of § 943.20(1)(e). Leaver renewed his dismissal

motion when the case came before a circuit court judge in December, but the motion was again denied.

On January 17, 2012, the prosecutor dropped the charge and the case was dismissed. Leaver then turned his sights on Hertz, winning a substantial financial settlement. We're concerned here with Leaver's § 1983 damages claim against Shortess for violating his Fourth Amendment right to be free from unreasonable seizure. Leaver contends that Shortess intentionally or recklessly omitted from his police reports certain facts that would have affected the prosecutor's probable-cause determination—namely, the terms of the "maximum keep" provision in the rental agreement and the "fact" that he had returned the car to Hertz Belgrade on August 26, 2010. The district judge entered summary judgment for Shortess, holding that no evidence supported Leaver's assertion that Shortess was aware of the omitted information and the omitted information wouldn't have undermined the probable-cause determination anyway.

## II. Discussion

We review a summary judgment de novo, construing the evidence in the light most favorable to Leaver and drawing all reasonable inferences in his favor. *Townsend v. Cooper*, 759 F.3d 678, 685 (7th Cir. 2014). Leaver claims that Shortess intentionally or recklessly omitted facts from his written reports that would have affected the prosecutor's charging decision, which in turn led to the issuance of an invalid arrest warrant and thus his arrest without probable cause, all in violation of his rights under the Fourth Amendment.[1]

---

[1] A warrantless arrest without probable cause gives rise to a Fourth Amendment claim for false arrest, which "cover[s] the time of detention

We accept, as we must at this stage, Leaver's claim that he returned the car to Hertz Belgrade on August 26. But no evidence suggests that Shortess was actually aware of that fact. The September 10 teletype said only that the stolen car was recovered in Montana—*not* that it was returned to a Hertz location there. As for the terms of the rental agreement, the most we can say is that the agreement contains some apparent inconsistencies. It prescribes a fixed date and place for the car's return: August 12, 2010 (extended to August 16); Hertz Appleton. But it also includes a longer "maximum keep" period (62 days), together with a warning that extra fees will apply for intercity returns and any additional days beyond the listed return date. In light of the other facts Shortess had gathered in his investigation, these conflicting contract provisions do not conclusively negate probable cause. Or at least qualified immunity applies. It would not have been clear to a reasonable officer that these contract provisions defeat probable cause.

"Qualified immunity protects police officers from suit to the extent that their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010) (internal quotation marks omitted). Leaver's Fourth

---

up until issuance of process or arraignment." *Wallace v. Kato*, 549 U.S. 384, 390 (2007). Once legal process commences, the Due Process Clause takes over and the claim is recognized—if at all—as one for malicious prosecution. *Bianchi v. McQueen*, 818 F.3d 309, 322 (7th Cir. 2016) (recognizing that after *Wallace* a Fourth Amendment false-arrest claim is limited to the period before legal process begins). Leaver was arrested on a warrant that was issued with the criminal complaint. It's not clear that the Fourth Amendment applies at all, but Shortess didn't raise this point so we consider it waived.

Amendment claim rests on an argument that the arrest warrant was invalid because Shortess withheld facts from his police reports that would have negated probable cause. Although we generally presume the validity of a warrant, that presumption may be overcome by a showing that the officer who sought the warrant "intentionally or recklessly withheld material facts from the warrant-issuing judge." *Id.* at 410–11. The key question here is whether the omitted details were indeed material to the probable-cause determination, a question we approach by asking "whether a hypothetical affidavit that included the omitted material would still establish probable cause." *Id.* at 411 (quotation marks omitted).

In the context of a § 1983 damages claim against the officer who sought the warrant, this inquiry accounts for the availability of qualified immunity. That is, we ask whether it would have been clear to a reasonable officer that the omitted fact was material to the probable-cause determination. *Id.* at 412–14; *see Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

Probable cause "is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Whitlock*, 596 F.3d at 411. Wisconsin's theft-by-lessee statute makes it a crime to "[i]ntentionally fail[] to return any personal property which is in his or her possession or under his or her control by virtue of a written lease or written rental agreement after the lease or rental agreement has expired." § 943.20(1)(e). The materiality of the omitted information depends in part on how Wisconsin law treats a

rental-car agreement with both a fixed expiration date and a longer "maximum keep" provision.

We have some guidance. The Wisconsin Supreme Court has upheld the validity of an arrest warrant for violation of the theft-by-lessee statute in a case involving a similarly confusing equipment rental agreement:

> We hold the arrest was valid. The equipment was rented on September 13, 1975. The rental agreement included a space labeled 'Date to be Returned.' That space was filled in with the date '9/15/75.' Although the agreement included a clause providing for additional rent if the equipment was returned after the date agreed upon, we do not believe that clause changed the expiration date of the rental contract.

*Robinson v. State*, 301 N.W.2d 429, 432 (Wis. 1981). *Robinson* lends support to Shortess's reading of the Hertz contract.

At the very least, Shortess can claim the protection of qualified immunity, which "tolerates reasonable mistakes regarding probable cause." *Whitlock*, 596 F.3d at 413. Knowing what Shortess knew, a reasonable officer could have concluded that Leaver committed theft by lessee notwithstanding the confusing language in the contract. Shortess knew that the rental agreement had a fixed expiration date of August 16, 2010, and also listed Hertz Appleton as the return location. He knew that the car was not returned to Hertz Appleton by that date. He confirmed with Hertz Appleton—and also West Bend Insurance—that the car was not a one-way rental. He also knew that Leaver had packed all his belongings in the leased car and headed for the west

coast and was last known to be in Montana. True, he was also aware by September 10 that the car was recovered in Montana, but as we've noted, no evidence suggests that he knew it had been returned to a Hertz location there. Shortess's interpretation of the rental agreement was reasonable under the circumstances and has some support in Wisconsin law, and he was entitled to rely on the credible complaining witnesses at Hertz Appleton.

In short, it would not have been clear to a reasonable officer that the information Leaver claims Shortess wrongly omitted from his police reports would have negated probable cause. Indeed, a Wisconsin court commissioner and circuit court judge—both aware of the language in the rental contract and Leaver's claim that he returned the car to Hertz Belgrade on August 26—found probable cause for the charge of theft by lessee. The district judge properly entered summary judgment for Shortess.

AFFIRMED.