In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-1124

JOSE GARCIA,

*Plaintiff-Appellant,*

*v.*

SHAWN POSEWITZ, *et al.*,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 20-cv-988-bbc — **Barbara B. Crabb**, *Judge.*

———————————

ARGUED OCTOBER 4, 2022 — DECIDED AUGUST 22, 2023

———————————

Before SCUDDER, ST. EVE, and JACKSON-AKIWUMI, *Circuit Judges.*

PER CURIAM. After the district attorney's office dropped charges against Jose Garcia for sexually assaulting a minor, he brought this suit for false arrest against two prosecutors from the office and a local detective. Garcia argued that they omitted material information from the criminal complaint they used to support probable cause for his arrest. The district court entered summary judgment for the defendants based on

qualified immunity, concluding that no reasonable jury could find that it would have been clear to a reasonable officer that the information omitted from the complaint would have negated probable cause. We agree and affirm.

**I**

On August 23, 2016, Monique Cichocki called the Village of Lake Delton Police Department in Wisconsin to report that her 15-year-old daughter, G.C., had been the victim of a sexual assault. Monique explained that the assault happened a few days earlier while her family was vacationing at a resort in the Village of Lake Delton with another family, the Garcias. Monique reported that G.C. was sexually assaulted in one of the resort's pools by the other family's father, Jose Garcia.

Detective Shawn Posewitz followed up with Monique to conduct an interview. According to Monique, on the day before they left the resort, G.C. told her that Garcia assaulted her earlier that day in the pool while horseplaying with both families' children. Monique said that she and her husband were not present at the time of the incident, having already returned to their room to prepare dinner. Monique recounted G.C.'s report that, while G.C. and the other children were in the pool, Garcia purposely touched her breasts. Later that night, Monique recalled, G.C. said that Garcia had also touched her "down there." The families stayed at the resort until the next afternoon.

Monique then told Posewitz what happened after they returned to their home in Chicago, and her statement suggested that G.C. could not remember all the details of the incident. Monique said that she informed her husband of their daughter's account and could not answer his questions about

it, saying, "I don't know … [M]aybe it will come back to her." Monique told Posewitz that she tried to help G.C. remember by encouraging G.C.'s brother, who was also in the pool at the time, to tell G.C. what he saw. According to Monique, when a friend suggested that surveillance cameras might have captured the assault on video, G.C. expressed fear that the video would contradict what she said.

Posewitz interviewed G.C. later that day. G.C. told him that Garcia touched her inappropriately. She described her location in the pool when Garcia pulled her onto his lap and grabbed her breasts. G.C. recalled that Garcia's daughter began to swim toward them, so Garcia threw G.C. into the water. About ten minutes later, Garcia pulled her onto his lap again and rubbed her vagina over her bathing suit. G.C. told Posewitz that the incidents lasted around two minutes each. She said she was surprised nobody saw what happened because Garcia's wife was at a nearby table.

The next day, Posewitz met with the resort's security director and reviewed surveillance footage of the pool area at the time of the incident. Posewitz noted that the footage was poor quality and inconclusive: it did not clearly show whether Garcia and G.C. were together and thus neither supported nor ruled out her account.

Posewitz discussed the case with Richard Spoentgen, an assistant district attorney. Spoentgen reviewed the police reports and consulted with another assistant district attorney, Linda Hoffman. Hoffman suggested that G.C. or a family member conduct a "pretext call" with Garcia that law enforcement would record, but no call ever took place.

Spoentgen then drafted a criminal complaint, which Hoffman reviewed, suggesting three minor edits (to delete an extra word, identify the resort's location, and consider shortening the draft). The final complaint included some, but not all, of the details from Posewitz's interview with G.C. and did not mention Monique's interview or the surveillance footage. Posewitz and Spoentgen signed the complaint. The complaint was reviewed by the Circuit Court Commissioner, who found probable cause for Garcia's arrest. Garcia was soon arrested. Hoffman was assigned as the prosecutor on the case.

At a preliminary hearing, a Wisconsin judge heard testimony from Posewitz and determined that there was probable cause to proceed to trial. But the trial was short-lived. After Hoffman gave an opening statement, the judge declared a mistrial because Hoffman mentioned that G.C. had a learning disability, which had not been disclosed to the defense. The district attorney's office reassigned the case to Spoentgen and another prosecutor. The new team moved to dismiss the charges because the state "w[ould] not be able to present sufficient credible evidence at trial to prove the charged offenses."

Garcia then sued detective Posewitz and prosecutors Hoffman and Spoentgen for violating his Fourth Amendment rights by arresting and detaining him without probable cause. *See* 42 U.S.C. § 1983. He also pursued additional constitutional and state-law claims (such as due-process violations and malicious prosecution) that were dismissed and are not relevant to this appeal.

After discovery, the defendants moved for summary judgment (Posewitz moving separately). Hoffman and

Spoentgen argued that they had absolute immunity because they acted only as prosecutors, and the doctrine of issue preclusion barred relitigating whether they had probable cause, which was an issue decided at the preliminary hearing. All defendants argued that they had qualified immunity because their decisions to arrest and prosecute Garcia did not violate clearly established law.

Garcia countered that a jury could find that the defendants intentionally or recklessly omitted material information from the criminal complaint that called into question the reliability of G.C.'s account. He highlighted (1) Monique's statement that G.C. was afraid that the surveillance video would not match her account; (2) the "inherently improbable" nature of the assault, which occurred in a crowded pool, surrounded by lifeguards, and with no apparent eyewitnesses; and (3) the apparent inconsistency between what Monique said in her initial report to the police (G.C. told her Garcia only touched G.C. inappropriately once) and what G.C. said in her interview (Garcia touched her twice, ten minutes apart). Garcia also argued that the prosecutor-defendants were not entitled to immunity because Hoffman made investigatory suggestions to Posewitz, and Spoentgen acted as the complainant for the document used to obtain a warrant. Finally, Garcia argued that the probable-cause issue was not precluded because, among other reasons, a lawsuit under 42 U.S.C. § 1983 is more extensive than was his preliminary hearing, and the state judge who presided at the preliminary hearing did not adequately justify his ruling.

The district court entered judgment for all defendants, concluding that they were immune from damages under the doctrine of qualified immunity. The pertinent question,

according to the court, was "whether a reasonable officer could have believed plaintiff's arrest was lawful, in light of the clearly established right to be free from arrest without probable cause and based on the information defendants had at the time they prepared and signed the criminal complaint." Here, the court explained, a reasonable officer could believe that there was probable cause because G.C.'s and Monique's accounts were largely consistent, and the defendants lacked any indication that G.C. or Monique had a motive to lie. Moreover, the inconsistencies identified by Garcia did not negate probable cause: for example, G.C.'s apprehensiveness upon learning of the surveillance footage could just as easily reflect a fear of mistaking details rather than fabricating them, and nothing in the record suggests that the footage was exculpatory.

## II

Garcia challenges the district court's summary-judgment ruling. The parties' arguments on appeal mirror those raised in the district court. They debate whether the defendants are immune from suit and whether the probable-cause issue is altogether precluded by the state-court proceeding.

As a preliminary matter, we agree with Hoffman that Garcia waived any argument against her. Garcia does not argue the nature or extent of Hoffman's involvement in the alleged constitutional violations; in fact, he does not mention Hoffman once in the argument section of his opening brief. Undeveloped arguments cannot preserve a claim on appeal. *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704–05 (7th Cir. 2022).

As for Garcia's claims against Posewitz and Spoentgen, we begin by addressing qualified immunity, which resolves this

appeal. Qualified immunity protects government officials from liability for damages unless they "violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *accord Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F.4th 555, 567 (7th Cir. 2022). Once the defense is raised, the plaintiff bears the burden of defeating it by showing that (1) the defendants violated a constitutional right and (2) the constitutional right was clearly established at the time of the violation. *Fosnight v. Jones*, 41 F.4th 916, 924 (7th Cir. 2022).

With respect to the first step, an official violates the Fourth Amendment by intentionally or recklessly omitting from a warrant application information that is material to determining probable cause. *Whitlock v. Brown*, 596 F.3d 406, 408 (7th Cir. 2010). "[A]n omitted fact is material if its inclusion would have negated probable cause." *Id.* at 411. To test materiality, we ask "whether a hypothetical affidavit that included the omitted information would still establish probable cause." *Hart v. Mannina*, 798 F.3d 578, 593 (7th Cir. 2015) (quoting *United States v. Robinson*, 546 F.3d 884, 888 (7th Cir. 2008)).

Probable cause, in turn, exists when there is a probability or substantial chance of criminal activity. *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). It is a "fluid concept" that is judged by considering the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 232–33 (1983). Thus, probable cause is "not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232.

Garcia points to several omissions that he deems material to the probable-cause finding. He contends that the complaint should have included (1) Posewitz's conclusion that the

surveillance footage does not show the alleged assault; (2) inconsistencies between G.C.'s and Monique's statements; (3) the lack of eyewitnesses to the assault; (4) G.C.'s difficulty recalling details of the episode (as reflected in Monique's statement to Posewitz); (5) G.C.'s fear (also according to Monique) that the footage would contradict her statement; and (6) a more thorough explanation of Monique's behavior, because it was "highly inconsistent" with mothers who learn that their daughter was sexually assaulted.

But Garcia has a high hurdle to combat a probable-cause determination because G.C., the putative victim, identified him as responsible. *See Beauchamp v. City of Noblesville*, 320 F.3d 733, 744–45 (7th Cir. 2003). An officer need not even believe that a witness is reliable to determine that her statement supports probable cause for an arrest because the assessment of credibility rests with courts, not officers. *See Coleman v. City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019). In fact, even a recantation of a statement does not on its own negate probable cause. *See id.* And in sexual-assault cases, an officer may find probable cause even more easily when a witness is inconsistent or has memory problems because these reactions are not rare among victims of such crimes. *See Beauchamp*, 320 F.3d at 745.

We need not decide whether any of the omissions were material to probable cause, however, because regardless of whether Posewitz and Spoentgen violated a constitutional right, that right was not clearly established. *See Whitlock*, 596 F.3d at 408 (courts may skip to step two of the qualified-immunity analysis). To be "clearly established," the right at issue must be so "beyond debate" that any reasonable official in the defendant's position would know that his actions

would violate it. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018). And the undebatable right must be defined with particularity. *See id.* at 1152 (noting that specificity is especially important in the Fourth Amendment context); *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (holding that "the right to be free of excessive force" was defined too generally; the court should have asked "whether clearly established law prohibited the officers from stopping and taking down a man in these circumstances"); *Whitlock*, 596 F.3d at 412–13 (holding that officers were protected by qualified immunity because criminal-conversion law was not sufficiently developed such that a well-trained officer would necessarily know that defendants' explanation for taking the property was material).

To meet his burden, Garcia needed to identify a reasonably analogous case that articulated the constitutional right at issue and applied it to a similar factual circumstance, or he needed to show that the violation was so obvious that a reasonable official in the defendants' positions necessarily would have recognized that their actions violated the Constitution. *Cibulka v. City of Madison*, 992 F.3d 633, 640 (7th Cir. 2021); *Leiser v. Kloth*, 933 F.3d 696, 701–02 (7th Cir. 2019). Though a case need not be exactly on point to make a right clearly established, *see Wesby*, 138 S. Ct. at 590, Garcia does not cite any analogous case—nor can we find one— clearly establishing that the sort of information omitted here is material to a probable-cause determination. Nor is a constitutional violation otherwise obvious. If we imagine a complaint that includes all of the information that Garcia insists should have been included, a reasonable official might still determine that there was probable cause to arrest him.

First, Garcia argues that the complaint should have noted that the surveillance footage does not show the assault. But an official could understandably discount the significance of the surveillance footage. Posewitz testified that he could not tell who was captured in the footage or whether bodies were in contact because of the poor video quality. He further testified that children frequently err when providing time frames. For those reasons, a reasonable official could decide that the footage was inconclusive and immaterial to the probable-cause determination.

Next, Garcia argues that the complaint omitted material inconsistencies between G.C.'s and Monique's statements to Posewitz. Monique said that G.C. told her of a single assault, and G.C. said that Garcia touched her breasts in the pool and ten minutes later touched her vagina. This inconsistency does not obviously negate probable cause. There is no requirement that a warrant application include all information, or even all inconsistencies, discovered in a preliminary investigation. *See Beauchamp*, 320 F.3d at 745. And an official could reasonably believe that G.C.'s trauma resulted in memory lapses or that she considered both assaults to have occurred on one occasion.

Garcia also contends that the complaint should have mentioned that there were no eyewitnesses. Garcia deems this fact significant because the circumstances of the alleged assault provided for plain viewing of misbehavior (a shallow pool and the presence of many people in the vicinity, including lifeguards, Garcia's wife and their children, and G.C.'s brother). But the complaint does mention that Garcia's wife, his children, and G.C.'s brothers were there. A reasonable official could assume that this presented enough

information for the Circuit Court Commissioner to conclude that the lack of eyewitnesses was suspicious, and therefore any comment on it was unnecessary. It would also be reasonable to think the statement was irrelevant. The absence of eyewitnesses that are willing to report an assault does not clearly undermine a victim's story.

Garcia argues that G.C.'s difficulty recalling details of the episode (as reflected in Monique's statement to Posewitz) was a material omission. But lapses in memory are not uncommon for victims of sexual assault. *See id.* (finding it reasonable for an officer "to not place great emphasis on the [rape] victim's … inability to recall the details of the crime clearly"). And G.C.'s statement to Posewitz did not indicate any lapses in her memory. The defendants were entitled to rely on G.C.'s statement because "the responsibility of sorting out conflicting testimony and assessing the credibility of putative victims and witnesses lies with the courts." *Id.*

Garcia also challenges that the complaint should have included the portion of Monique's statement to Posewitz that G.C. was fearful that the footage would contradict her statement. Monique told Posewitz that G.C. asked, "What if I make a mistake and I say something wrong and the video camera says something different?" We agree with the district court's analysis of this fact: "[I]t is equally reasonable to infer that [G.C.'s apparent nervousness] simply reflects G.C.'s concern, given the gravity of her allegations, that she not 'make a mistake' about the details." Again, this credibility assessment is one for the courts, not officers or prosecutors.

Finally, Garcia says that Posewitz and Spoentgen were required to include in the complaint a more thorough explanation of Monique's behavior, because it was "highly

inconsistent" with a mother who learns that her daughter was sexually assaulted. This argument does not help him. There is no rulebook for how parents should respond in these circumstances, so the defendants were not committing an obvious constitutional violation by excluding details about Monique's behavior.

Most critically, these omissions were offset by G.C.'s clear, detailed, and internally consistent statement to Posewitz that Garcia assaulted her. To be sure, the omissions are details of the type that Garcia would be able to highlight in his defense at a trial or in pretrial proceedings. But the question confronting the defendants was not Garcia's ultimate guilt; the question was whether probable cause existed to arrest him. And we conclude that an officer could consider each of the above omissions and reasonably determine that probable cause existed to arrest Garcia.

Because Spoentgen and Posewitz are entitled to qualified immunity, we need not discuss prosecutorial immunity or issue preclusion.

### III

For the above reasons, we AFFIRM the district court's order entering summary judgment for the defendants.