In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 17-1848

NELSON D. EDWARDS, *et al.*,

*Plaintiffs-Appellants*,

*v.*

MICHAEL JOLLIFF-BLAKE, *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-cv-4558 — **Jorge L. Alonso**, *Judge*.

_____

ARGUED SEPTEMBER 5, 2018 — DECIDED NOVEMBER 1, 2018

_____

Before EASTERBROOK, HAMILTON, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Chicago police officers obtained a warrant and searched the home of Nelson Edwards for drugs and a suspected drug dealer. After the search turned up neither, Edwards and his family brought suit under 42 U.S.C. § 1983 against the City of Chicago and the police officers who applied for and executed the search warrant. They alleged their constitutional rights were violated when the officers

obtained a warrant unsupported by probable cause, performed an unreasonable search of their home, and used excessive force during the search. The district court saw the material undisputed facts the other way and granted the defendants' motion for summary judgment. We affirm, concluding that probable cause supported the search warrant and, regardless, the officers are entitled to qualified immunity.

## I

Nelson Edwards owns a home on South Keeler Avenue in Chicago, where he lives with his daughters, Sherri and Shawna Edwards, and his granddaughter, Shawna Walker. In 2012, Chicago police officers searched the Edwardses' home after receiving a warrant authorizing them to look for heroin and an alleged drug dealer named Freddy Sutton. Michael Jolliff-Blake was the Chicago police officer who obtained the warrant, and he did so on the basis of information provided by a confidential informant, "J. Doe."

Four days before the search, Doe reported buying heroin in the house from a man he knew as "Fred." Jolliff-Blake prepared a warrant affidavit based on Doe's account: it stated that Doe had bought heroin from Fred for the past couple of months; Fred sold heroin out of the basement of the home on South Keeler; and Doe had bought and used heroin from Fred earlier that day and, while doing so, saw Fred carrying a plastic bag containing over 100 baggies of heroin. The affidavit also explained that Jolliff-Blake showed Doe a photo of the home on South Keeler, which Doe confirmed was the location in which he bought heroin. Jolliff-Blake then drove Doe to the location, where Doe again confirmed his identification of the

home. Jolliff-Blake also used a Chicago Police Department database to obtain a photograph of a man named Freddy Sutton, who Doe identified as the "Fred" who sold him heroin. Jolliff-Blake's supervisor and an assistant state's attorney reviewed and approved the warrant application.

The next day—one day after receiving the information from Doe—Officer Jolliff-Blake presented the application to a Cook County Circuit Court judge. Jolliff-Blake also brought Doe with him, made Doe available for questioning, and provided the judge with Doe's criminal history. The judge then questioned Doe under oath, though there is no transcript of the proceeding. The judge found that probable cause existed and issued the warrant.

The officers conducted the search four days later. Nelson and Sherri Edwards were outside and prevented from entering the home and disrupting the search, which took about two hours. At some point, Nelson Edwards tried to enter but was pushed by an officer and prevented from doing so. At another point, Nelson Edwards told the police that the home contained registered guns, which the police, in turn, located. During the search, a police dog alerted to the presence of drugs in the home, likely due to prescription narcotics found by the officers.

Ultimately, the search uncovered no heroin or other illegal drugs. Nor did the police find Freddy Sutton. After the police left, the Edwardses noticed some limited property damage, including a loose door frame, a mark on a door, and a cut chain on the outdoor fence.

In 2013, the Edwards family filed suit under 42 U.S.C. § 1983 against Officer Jolliff-Blake, other Chicago police

officers, and the City of Chicago, alleging violations of their civil rights through the defendants' procurement and execution of a search warrant without probable cause, including an excessive force claim for the use of force against Nelson Edwards. The Edwardses also brought a *Monell* claim against the City, alleging the existence of an unconstitutional policy allowing police officers to apply for search warrants based on information provided by anonymous John Doe informants.

The district court dismissed the *Monell* claim because the Edwardses did not plausibly allege the existence of any policy or practice permitting searches without probable cause. As to the claims against the individual officers, the district court granted their motion for summary judgment, concluding based upon its own review that the search warrant was supported by probable cause. It emphasized that Doe had acquired the information based on firsthand observations, provided a detailed description of his recent heroin purchase from Fred at a confirmed location on South Keeler, and personally appeared before the Cook County judge and answered her questions. The district court held in the alternative that the officers were entitled to qualified immunity based on their reasonable reliance on the warrant. The district court further concluded that the officers conducted the search in a reasonable manner and used no excessive force against Nelson Edwards.

## II

### A

In determining the sufficiency of a warrant affidavit, we focus on the totality of the information presented to the Cook

County judge. See *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003). Where, as here, the affidavit supporting a search warrant relies on information supplied by an informant, the analysis examines five primary factors, none of which is determinative by itself: "the level of detail, the extent of firsthand observation, the degree of corroboration, the time between the events reported and the warrant application, and whether the informant appeared or testified before the magistrate." *United States v. Glover*, 755 F.3d 811, 816 (7th Cir. 2014). In determining whether probable cause existed, "we look only at what the officer knew at the time he sought the warrant, not at how things turned out in hindsight." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003). The law affords "great deference" to the probable cause finding made by the judge who evaluated the warrant application in the first instance, and we will uphold that determination so long as there is a "substantial basis" for concluding "that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

These factors support the Cook County judge's finding of probable cause. The information that Doe provided the police was based on his detailed, firsthand observations as a long-time customer of a heroin dealer he knew as Fred. Doe provided specific information regarding his recent heroin purchase from Fred, including the quantity that he had purchased (3 baggies for $30), the quantity that Doe observed that Fred possessed (over 100 baggies), and a statement Fred made offering to sell Doe more heroin whenever he needed it. The police then corroborated Doe's account by having Doe identify a picture of the house, confirm that identification a second time by driving Doe to the location, and identify a picture of

Fred. The affidavit also established that Doe knew the substance to be heroin because he injected it shortly after the purchase and found it similar to the heroin he had purchased from Fred on other occasions. That Doe provided the police all of this information against his own penal interest reinforced his credibility. See *United States v. Jones*, 208 F.3d 603, 606, 609 (7th Cir. 2000) (explaining that an informant's reliability was bolstered because she admitted to purchasing approximately twelve pounds of marijuana from the suspect on at least three previous occasions).

Additionally, only one day had passed between Doe's purchase of the heroin and Officer Jolliff-Blake's application for the warrant. Finally, Doe personally appeared before the Cook County judge, giving the judge an opportunity to ask questions and thereby "evaluate the informant's knowledge, demeanor, and sincerity." *United States v. Robinson*, 724 F.3d 878, 884 (7th Cir. 2013). These facts and circumstances combined to demonstrate a substantial likelihood that the search would uncover evidence of a crime, and "the Fourth Amendment requires no more." *Gates*, 462 U.S. at 236.

The Edwardses beg to differ, emphasizing that the warrant application said not a word about Doe's reliability. They also contend that the police did next to nothing to corroborate Doe's account of drug dealing occurring at their home and provided no explanation in the warrant application of how the police determined that "Fred" was Freddy Sutton or how the drug house that Doe described was determined to be the home on South Keeler.

That Doe lacked a track record of serving as a reliable police informant is far from disqualifying. Indeed, as we have emphasized before, "[a]t the beginning of his work with the

police, every informant necessarily provides information for the first time." *Guzman v. City of Chicago*, 565 F.3d 393, 396 (7th Cir. 2009). In the absence of information on Doe's history of reliability, the law required the Cook County judge to assume that Doe had no record of past reliability. See *United States v. Koerth*, 312 F.3d 862, 867 (7th Cir. 2002). Statements from an informant of unknown reliability may serve to establish probable cause "if, under the totality of the circumstances, a reasonable person might consider that the statements are worthy of credence." *Id.* at 868. That is the case here.

To be sure, the Edwardses are right to observe that the officers largely took Doe at his word without independently corroborating much of his account. While the officers took steps to have Doe confirm the identity of the house and Fred, they did not seek corroboration outside of Doe himself. For example, the officers did not ask Doe to wear a wire when buying additional heroin from Fred or introduce another informant to Fred to do so. Put differently, the steps the police took gave them some additional information, but did not "directly bolster" Doe's account that Fred was dealing heroin at the home on South Keeler. *United States v. Dismuke*, 593 F.3d 582, 588 (7th Cir. 2010), abrogated on other grounds, as recognized in *United States v. Miller*, 721 F.3d 435, 438–39 (7th Cir. 2013).

These observations only go so far, though. We must view the corroborative efforts the police took against the multiple other factors strongly supporting a finding of probable cause. And here those facts added up to probable cause: Doe's detailed tip was based on firsthand and recent observations; he confirmed the identity of the location and person from whom he bought the heroin; and then he appeared before the Cook

County judge and submitted to questioning. The district court reached this exact conclusion after conducting a careful and detailed review of the record, and we see no basis to disagree.

For their part, the Edwardses see disputed factual issues at every turn and argue the district court should have sent the case to trial. We disagree. The only facts "relevant to determining whether probable cause existed are those known to the police when they apply for a warrant." *Beauchamp*, 320 F.3d at 745. And, while the Edwardses are able to point to certain facts that remain disputed, we do not see those facts as both genuine *and* material to the probable cause question. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

Consider a few examples. Take the Edwardses' contention that the dispute over whether Doe had a prior relationship with the police precludes summary judgment. Viewing the facts in the light most favorable to the Edwardses shows that Doe first met the officers only shortly before he gave the tip and, more specifically, just after he came into police custody while high on heroin, craving more heroin, and in a state of mind where he was willing to do about anything to get that heroin, including serve as a police informant.

Even if all true, we fail to see how this materially alters the probable cause analysis. The warrant affidavit made no representations that Doe had a prior relationship with the police or a track record of providing reliable information. Further, the affidavit made clear that Doe was a heroin user, and the Cook County judge was provided with Doe's criminal history. And the police certainly are not playing in foul territory by choosing to talk to heroin users about where and from whom they buy heroin.

Take another example. The Edwardses emphasize that Doe was unable to identify the address and location of the drug house at his depositions. Doe's inability to recall the address of the house during his depositions in 2015, however, does not create a genuine dispute of fact as to whether Doe identified the home on South Keeler as the drug house in 2012. Doe never wavered in his assertion that he had purchased heroin from the house he had identified for the officers, even if three years later he provided confused testimony regarding the exact location of the house.

Finally, the Edwardses point out that during the course of the litigation, Officer Jolliff-Blake originally provided incorrect information regarding Doe's identity in his discovery responses. Jolliff-Blake amended his discovery responses, explaining that his error was the product of having 8–10 informants at any given time and apparently not keeping organized or detailed logs about each of the informants. What is clear, however, is that the Edwardses had a full and fair opportunity to depose J. Doe after Jolliff-Blake made the correction. At summary judgment, the Edwardses pointed to no evidence indicating that the person who provided the tip was not the same person who appeared before the Cook County judge and who they later deposed.

While our dissenting colleague is correct to observe that the district court originally noted that Officer Jolliff-Blake's changed discovery responses raised credibility issues, the district court ultimately concluded that no factual dispute precluded a determination that probable cause existed. Statements made in the course of ruling on a discovery dispute do not change this determination, which was based on the court's careful review of the record. And on this record, the

officer's confusion and poor recordkeeping do not negate the Cook County judge's finding of probable cause based on an informant that personally appeared before her.

The Edwardses have not identified a genuine dispute as to any fact that is material to our probable cause inquiry.

B

We also see no constitutional infirmity in the officers' execution of the search. They had a warrant to search a single-family home for illegal drugs and that is what they did. They were not required to call off the search because the home did not fit the stereotype of a stash house. Rather, our caselaw requiring officers to abandon a search addresses scenarios in which the warrant plainly did not describe the location to be searched, such as where, for example, the warrant described a single-family home and the officers arrived to find a multi-unit building. See *Guzman*, 565 F.3d at 397–98; *Jacobs v. City of Chicago*, 215 F.3d 758, 771 (7th Cir. 2000) (same). The Edwardses attempt to shoehorn the facts at hand into this body of caselaw, noting minor inconsistencies between how the home at South Keeler was described in the warrant and how the officers encountered it. For instance, the Edwardses point out that their basement was a small, cluttered area, which is inconsistent with it being a site to run a heroin operation. But these small inconsistencies, pointed out with the benefit of hindsight, would not have given the officers good reason to believe they were searching the wrong home.

Nor are we aware of any rule requiring officers executing a valid warrant to abandon the search if drugs are not imme-diately seen or found. Here, the police dog alerted for the presence of narcotics in the home and Nelson Edwards told

the officers that there were guns in the home, which the officers then had to locate. Faced with these circumstances, the Fourth Amendment did not require the officers to call off the search. We cannot say that the officers' taking two hours to search an entire home exceeded the bounds of reasonableness. See *United States v. Jennings*, 544 F.3d 815, 818 (7th Cir. 2008).

The police were also on solid legal ground in detaining the Edwardses during the search, as a warrant founded on probable cause carries with it the "categorical authority to detain any occupant of the subject premises during the search." *Id.* Furthermore, the district court properly rejected Nelson Edwards' excessive force claim. A push by an officer to stop Nelson Edwards from running into a house that was subject to an ongoing search was objectively reasonable under the circumstances. See *Graham v. Connor*, 490 U.S. 386, 397 (1989).

**III**

So, too, do we agree with the district court's conclusion that, even assuming the search warrant was not supported by probable cause, the officers are entitled to qualified immunity for their conduct in procuring and executing the warrant. In assessing qualified immunity, we ask two questions: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012). We conduct this inquiry against the backdrop of the Supreme Court's repeated (and recent) reminders "not to define clearly established law at a high level of generality" and with the understanding that

qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); see also *White v. Pauly*, 137 S. Ct. 548, 551–52 (2017).

An "officer who relies on a subsequently invalidated warrant may be liable for § 1983 damages only if the warrant application was 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" *Junkert v. Massey*, 610 F.3d 364, 369 (7th Cir. 2010) (quoting *Malley v. Briggs*, 475 U.S. 335, 345 (1986)). This standard derives from, and is applied much like, the standard for the good-faith exception to the exclusionary rule. *Id.* An officer faces personal liability only if "courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand" or if "the affidavit is so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Id.* (quoting *Koerth*, 312 F.3d at 870).

Time and again we have upheld warrants based on an informant's recent and firsthand account of criminal activity. See, *e.g.*, *Dismuke*, 593 F.3d at 588 (upholding warrant based on informant's tip that he had personally observed the suspect with guns in his home within the last week); *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008) (concluding that an affidavit based on informant's tip that he had seen drugs on the suspect and in the suspect's residence within the past 72 hours "clearly supported a determination of probable cause"). Here, the affidavit contained detailed information about Doe's recent purchase of heroin, explaining where Doe

bought the drugs, who he bought them from, and the steps the police took to confirm Doe's identification of the location and Fred as the seller. Officer Jolliff-Blake presented Doe to the Cook County judge, who then proceeded to question Doe. There was no reason the officers should have doubted the sufficiency of these actions once the Cook County judge—relying upon the totality of this information—approved the application and issued the warrant. The district court reached the same conclusion: that probable cause existed to support the warrant. While not dispositive, agreement by neutral fact-finders that probable cause existed "certainly is further evidence that [the officers'] reliance on the affidavit was reasonable." *United States v. Harju*, 466 F.3d 602, 611 n.5 (7th Cir. 2006).

The Edwardses posit that the police procured the warrant with a reckless disregard for the truth. It is "clearly established 'that a warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue.'" *Lawson v. Veruchi*, 637 F.3d 699, 705 (7th Cir. 2011) (quoting *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003)). The standard requires a showing that the Edwardses cannot make: that "the officers entertained serious doubts as to the truth of their statements, had obvious reasons to doubt the accuracy of the information reported, or failed to inform the judicial officer of facts they knew would negate probable cause." *Beauchamp*, 320 F.3d at 743.

As the Edwardses see it, multiple omissions on the officers' part evince their reckless disregard for the truth. They assert that the officers failed to disclose Doe's severe heroin addiction, the coercive (heroin-craving) circumstances under which he provided the tip, and his failure to adequately identify his supplier and the house where he claimed to have purchased drugs. The Edwardses also argue that the officers unreasonably relied upon "an obviously impaired witness" who gave them inconsistent information, and then recklessly failed to corroborate this information.

These omissions were either presented to the Cook County judge or irrelevant to the probable cause determination. Foremost, the Edwardses too discount, if not entirely overlook, that Doe appeared before the Cook County judge. They also ignore that the officers provided the judge with Doe's criminal history and the affidavit contained much of the purportedly omitted information, including Doe's use of heroin. More to the point, the affidavit stated that Doe had been using heroin for over two years, had used heroin the day before, and had bought heroin from Fred "numerous times" in the past two months. It was no secret to anyone that Doe was a heroin addict. And it could not have possibly been news to the Cook County judge that Doe, as an addict, may have been impaired, suffering from withdrawal, and had an incentive to cooperate with the police. Judges, too, live in the real world and "are aware that informants are frequently facing charges and hoping for deals." *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 970 (7th Cir. 2003). Given Doe's appearance and the officers' disclosures, this is a far cry from a situation involving the "wholesale omission of damaging credibility information." *Glover*, 755 F.3d at 818.

The Edwardses further argue that the officers failed to disclose Doe's confusion as to the location of the drug house. The Edwardses point to nothing in the record, however, indicating the officers had reason to doubt Doe's identification of the drug house at the time they applied for the warrant. They instead rely on Doe's inability to recall the address of the drug house at his depositions years later. It is unclear how the officers could have disclosed something to the Cook County judge that they did not know at the time. The Edwardses cannot manufacture a factual dispute with after-the-fact confusion.

Nor does the officers' minimal corroboration show a reckless disregard for the truth sufficient to overcome qualified immunity, especially in light of the other factors indicating the reliability of Doe's information. At the time they applied for the warrant, Doe had identified the residence on South Keeler as the drug house, from a picture and in person. The officers had no reason to doubt the accuracy of this information and instead, may have reasonably assumed that someone with a drug habit would be able to identify the house where he had recently purchased drugs. The affidavit outlined the steps that Jolliff-Blake took to corroborate Doe's account. Armed with this information, "[t]he state judge could have told the police that they needed to do more investigation; by issuing the warrant instead, the judge entitled the police to search without the risk of personal liability." *Walker v. Weatherspoon*, 900 F.3d 354, 358 (7th Cir. 2018).

The record does not support the conclusion that the officers recklessly attempted to mislead the Cook County judge, and the officers are entitled to qualified immunity. See *e.g.,*

*Archer v. Chisholm*, 870 F.3d 603, 615–16 (7th Cir. 2017) (reject-ing the argument that defendants recklessly provided mis-leading statements in the warrant application and concluding defendants were entitled to qualified immunity); *Junkert*, 610 F.3d at 370 (concluding officers were entitled to qualified immunity based on their reasonable belief that the affidavit established probable cause even though it left "much to be de-sired").

**IV**

The district court properly entered judgment for the City of Chicago on the *Monell* claim. The *Monell* claim arises out of the Chicago Police Department's policy and practice of using John Doe informants and, most importantly, is premised on the same conduct upon which the Edwardses base their claims against the individual officers. Because the Edwardses cannot make out a constitutional violation in their claim against the individual officers, there can be no viable *Monell* claim based on the same allegations. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); see also *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) ("Probable cause also establishes that White did not suffer a constitutional injury, which is a necessary element of a *Monell* claim.").

Finally, the district court did not abuse its discretion in denying the Edwardses' motion to compel Doe's Registered Cooperating Individual file. We will reverse a district court's denial of a motion to compel only upon a "clear showing that the denial of discovery resulted in actual and substantial prej-udice." *Gonzalez v. City of Milwaukee*, 791 F.3d 709, 713 (7th Cir. 2015). The district court determined that the file was not rele-vant because it related only to Doe's track record as an inform-

ant after he provided the tip in question. We agree, and conclude that the Edwardses have not made out the requisite showing of prejudice.

For these reasons, the district court correctly concluded the search warrant was supported by probable cause and the officers' conduct in executing the warrant was reasonable. We AFFIRM.

HAMILTON, *Circuit Judge*, dissenting in part. Plaintiffs' claims against defendant Jolliff-Blake should be remanded for trial. As recognized by Judge Chang, the first district judge to handle this case, both Officer Jolliff-Blake and the "John Doe" informant who testified have significant credibility problems. Those credibility problems call into question the foundation for the search warrant. A jury should decide the claims against Jolliff-Blake.

Eleven police officers arrived at plaintiffs' home with a warrant to search the house for drugs. It was not a promising site for finding a round-the-clock drug operation. Nelson Edwards had owned the home for 41 years. In 2012, he was 72 years old and had retired after working for 31 years for the University of Illinois at Chicago. He lived at the house with his two daughters and his twelve-year-old granddaughter. Police officers found no drugs beyond prescription medication. In fact, upon entry, it was clear enough to the officers that they likely had the wrong house that the supervising sergeant ordered the "white glove" treatment. A short while into the search, Mr. Edwards' daughter overheard one officer say, "We've been bamboozled again."

The central claim in this lawsuit is that Officer Jolliff-Blake made false statements, either knowingly or recklessly, to the judge who issued the search warrant. See, e.g., *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003). The plaintiffs contend that Officer Jolliff-Blake was at least reckless in obtaining a search warrant for their home based on what he was supposedly told by an unreliable heroin addict, one who was desperately "dope-sick" and desperate to tell the police something—or anything. It's not surprising that heroin addicts are sources of information about where to buy heroin.

But the key questions are what Officer Jolliff-Blake knew when he sought the warrant, and whether he had obvious reasons to doubt the information he reported to the judge. E.g., *Beauchamp v. City of Noblesville*, 320 F.3d 733, 742–43 (7th Cir. 2003), citing *Malley v. Briggs*, 475 U.S. 335, 345, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

To be clear, if we accept the defendants' *final* version of the facts here, then all defendants were entitled to summary judgment. The majority's account of the law applicable to the defense's final version of the facts is correct. The search of the plaintiffs' home was a fruitless fiasco, but it did not violate the Fourth Amendment if it was based on a mistaken but honest judgment to trust what the informant told the police.

But I disagree with my colleagues because two genuine issues of material fact are at the heart of plaintiffs' claims against Officer Jolliff-Blake. Conflicting testimony from Jolliff-Blake and "Doe" means that neither's testimony can or should be accepted for purposes of summary judgment. The first issue is the sheer identity of the "John Doe" informant upon whom the search warrant application was based. The second is which house "John Doe" supposedly told Jolliff-Blake was where he had bought heroin.

The majority accepts as undisputed the final answers provided in discovery by Jolliff-Blake and then by Doe. As explained below, however, those final answers conflicted with repeated, sworn testimony from both Jolliff-Blake and John Doe on the same subjects.

The defense attributes the changing answers under oath to confusion and the fallibility of memory. Fair enough, but this

is summary judgment. Plaintiffs are entitled to the benefit of any admissible evidence favoring their claims and conflicts in the evidence, as well as reasonable inferences favorable to their claims. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (a "judge's function" on summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"); *Muhammad v. Pearson*, 900 F.3d 898, 902 (7th Cir. 2018), citing *Zimmerman v. Doran*, 807 F.3d 178, 182 (7th Cir. 2015). A jury hearing both Jolliff-Blake's and John Doe's conflicting answers on critical facts could reasonably conclude that neither should be believed about any important fact. See *Reeves*, 530 U.S. at 147 (relying on "general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt'"), quoting *Wright v. West*, 505 U.S. 277, 296 (1992).[1]

*Officer Jolliff-Blake's Original Version*: From the beginning, plaintiffs sought the identity of the "John Doe" who supposedly claimed he had bought heroin at plaintiffs' home in June 2012. The defense refused, asserting that the information should be kept confidential. Plaintiffs then served requests for admissions under Federal Rule of Civil Procedure 36. Jolliff-Blake answered the requests for admission twice, on December 2, 2013, and again on January 29, 2014, with amendments not relevant here.

---

[1] I agree with my colleagues' decisions about claims against all other defendants. If Jolliff-Blake was dishonest or reckless in obtaining the search warrant, plaintiffs could hold him accountable for the restraints on their liberty and the use of force against Mr. Edwards during an unconstitutional search.

In those twice-sworn answers, Jolliff-Blake claimed that: (1) he knew the identity of John Doe at the time of the search but no longer knew it; (2) he had kept no written notes or records of Doe's real name, address, or telephone number; (3) he had never registered Doe as an informant under Chicago police policies; and (4) he had not used Doe as an informant since the debacle at the Edwards' home.

After responding to the requests for admissions, Jolliff-Blake also answered plaintiffs' interrogatories, first on March 5, 2014 and again on August 20, 2014. Those sworn answers repeated that, after the search of the plaintiffs' home in June 2012, Jolliff-Blake had not used Doe again to obtain search or arrest warrants and that Doe had not been registered as an informant.

Plaintiffs then moved to compel defendants to identify "Doe." Judge Chang held a hearing on August 5, 2014. He pointed out that the search had failed to uncover the alleged drug-dealer, any drugs, or any drug paraphernalia, rendering the representation "that there was a drug operation operating supposedly night and day in that basement" a "falsity." In terms of whether Officer Jolliff-Blake knowingly or recklessly disregarded the truth, the judge observed that "right now you have, as far as the records show, officers who took the word of someone who had just supposedly gotten high and bought drugs at this location and they didn't ask him why he is cooperating." At that hearing, however, Judge Chang postponed ruling on the motion to compel until after Officer Jolliff-Blake's deposition.

*Officer Jolliff-Blake's New Story*: Faced with a likely order to disclose Doe's identity, Jolliff-Blake changed his story a few days before his deposition. He filed a motion under Rule 36(b)

for leave to change his answers to four requests to admit. In the new answers, Jolliff-Blake claimed that all of his testimony up to that point had been about *the wrong "John Doe."* Jolliff-Blake now claimed that: (1) he actually did know Doe's true name; (2) he did keep records of Doe's identity; (3) Doe in fact had been registered as an informant; and (4) he had actually used Doe as an informant again after the search of the plaintiffs' home.

This is how Jolliff-Blake himself amended his answers:

Request No. 25. The defendant responding to this Request to Admit knows the true name of the "John Doe" informant who gave information leading to the issuance of Search Warrant #12 SW 6213.

Withdrawn Answer: Denied

Amended Answer: Admit

Request No. 31. The defendant responding to this Request to Admit kept no written notes or records of the name, address, or telephone number of the "John Doe" informant who gave information leading to the issuance of Search Warrant #12 SW 6213.

Withdrawn Answer: Admit

Amended Answer: Admit defendant kept no written notes or records of the address or telephone number of the "John Doe" informant. Deny defendant kept no written notes or records of the name of the John Doe informant.

Request No. 32. The defendant responding to this Request to Admit has never registered the "John Doe" informant who gave information leading to the issuance

of Search Warrant # 12 SW 6213 5 as a Registered Co-operating Individual as defined in the Chicago Police Department policies and procedures.

Withdrawn Answer: Admit

Amended Answer: Deny

Request No. 34. The defendant responding to this Request to Admit has not used the "John Doe" informant who gave information leading to the issuance of Search Warrant #12 SW:6213 as an informant since using him to obtain Search Warrant #12 SW 6213.

Withdrawn Answer: Admit

Amended Answer: Deny

Officer Jolliff-Blake attributed this dramatic change in his repeated, sworn testimony to an epiphany he supposedly experienced when he read his partner's deposition testimony describing the "John Doe" for this search warrant. Jolliff-Blake claimed he realized then that when he had answered the requests to admit, he "mistakenly confused the [relevant] informant with two other informants that he was also using about the same time in the 11th District who were physically similar in color, size and stature to the [relevant] Informant."

Plaintiffs did not buy this explanation. In opposing Jolliff-Blake's motion to withdraw his admissions, they pointed out how many times he had repeated the original version under oath and how much work their attorneys had done based on the original version. They also argued that his new answers

were just false. They questioned whether there had actually been a real John Doe for this search warrant.[2]

Judge Chang's oral decision on the motion to withdraw admissions was sensible. He allowed Officer Jolliff-Blake to withdraw his admissions, but he explained that the changing answers presented credibility issues for a jury:

> At this point it is better to allow the plaintiff to cross-examine on the changes rather than to lock in the defendant on a version of events that, at least according to the defendant, [is] not accurate anymore.

> This goes right to the heart of the merits of the case. And there was some time passage, obviously, between the underlying events in this case and the answers to the request to admit. He has worked on, you know, many, many investigations since then. And so I will allow this amendment so that we have the fact finder, you know, the jury, actually decide on the back and forth of testimony as opposed to on really a discovery issue.

> This does not meant that he should not have been better prepared to answer the requests to admit. This was obviously a crucial issue, and it really should have

---

[2] Confidential police records submitted *in camera* show that months after the fruitless search of plaintiffs' home (and after time for an internal investigation), Officer Jolliff-Blake recorded using the same "John Doe" as making three controlled drug buys within one week. The records indicate that Doe received no money and produced not even one arrest. These supposed buys were apparently the minimum needed to "register" Doe as a "registered cooperating individual," which could strengthen a claim in court that his identity should be kept confidential.

been the focus of a searching inquiry of his own memory, but it is going to be up to the fact finder to decide as opposed to leaving it to the request to admit.

Nov. 21, 2014 Tr. 18. Judge Chang also required the defense to pay some costs of follow-up discovery required by the changes in Jolliff-Blake's testimony.

The judge's approach had a sound legal basis. When a party obtains relief from an admission under Rule 36(b), both answers are admissible as an opposing party's admission and can be used to impeach the witness. 8B Wright & Miller, *Federal Practice & Procedure* § 2264 (3d ed.). That is essentially the same result as when a deposition witness changes an answer under Rule 30(e). *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000) (amending deposition answer does "not remove the issue from the jury" because "fortunately the rule requires that the original transcript be retained . . . so that the trier of fact can evaluate the honesty of the alteration"); 8A Wright & Miller, *Federal Practice and Procedure* § 2118 (3d ed.) ("the preferable rule seems to be that the original answers must of course remain in the record" and can be used for impeachment purposes at trial).

*"John Doe's" Testimony*: In the wake of Jolliff-Blake's new story, Judge Chang also ordered disclosure of John Doe's identity. Defendants identified the person who they claimed had provided the basis for this search warrant, and plaintiffs took his deposition. To call him a difficult witness is an understatement. His deposition was conducted in three sessions.

The first two ended when he just walked out. To call his testimony confused is even more of an understatement.[3]

Doe's account of where he had supposedly bought heroin was a moving target. During his first session, he testified—repeatedly—the he had bought the drugs from a house on *Flournoy Street*, not from the plaintiffs' home on Keeler Avenue. Doe referred to Flournoy Street a dozen times. He emphasized that, although "I don't know addresses," "If you needed dope, everybody would just say go down—go down to Flournoy."[4] Plaintiff's attorney was the first to mention "the 800 block of South Keeler," where plaintiffs lived, but Doe stuck to his Flournoy answers until right before the abrupt end of the deposition when he stumbled onto "Arthington." Doe's later two sessions hewed more closely to the defendants' preferred version, that he bought heroin from the plaintiffs' house at the corner of South Keeler and Arthington.

These conflicts in a witness's testimony on a critical issue present genuine issues of fact. Parties moving for summary judgment are not entitled to "cherry-pick" only the evidence

---

[3] In addition to oscillating between incoherent combativeness and appearing to drift off to sleep, the witness peppered his testimony with easily disprovable and pointless lies. For example, he said his parents died in Hurricane Katrina. In reality, he had recently been convicted of defrauding his mother, who lived in Illinois. He said he attended a high school in New Orleans that does not exist. He actually attended high school in Illinois.

[4] Early in the deposition, the witness hesitated and said: "Pretty sure that's the street name. Or Lexing – no. Wait – Lexington. Flournoy. Flournoy." The target of the drug search was ostensibly one Freddie Sutton, who had a long list of drug-related arrests and whose long-time residence was several blocks away on Lexington, near Flournoy.

most favorable to them. E.g., *Malin v. Hospira, Inc.*, 762 F.3d 552, 564 (7th Cir. 2014). When moving parties make that mistake, it's the court's job to correct the mistake, not to repeat it. *Id*.

*The Majority's Excuses for the Defense*: The majority acknowledges Doe's "confused" testimony and Jolliff-Blake's "confusion and poor recordkeeping." Ante at 9–10. Yet the majority finds no reason to doubt the (final) versions of their testimony supporting the search warrant. Respectfully, as Judge Chang recognized in the district court, it is not the task of a district court or this court to sort out such factual disputes on summary judgment.

Confusion, poor recordkeeping, and the effects of time on memory may be reasonable explanations for the conflicts, but they are not the only ones. A reasonable jury could also conclude that if Officer Jolliff-Blake was willing to testify—repeatedly—to his original version, then he simply is not a reliable witness. Maybe his memory was faulty. Maybe he was not being honest. Either way, he impeached his own testimony on critical facts. He showed that his testimony is not reliable. At the very least, that's what a reasonable jury could find.

Standard jury instructions teach jurors that in deciding what weight to give a witness's testimony, they may consider impeachment by his own prior statements and conflicting testimony from others. The instructions also teach that in weighing the effect of an inconsistent statement, jurors should "consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail." Seventh Circuit Pattern Civil Jury Instruction 1.14.

I do not contend that trivial variations in a witness's testimony always require denial of a summary judgment motion based on his testimony. The contradictions here, however, go to the heart of the case: who was "John Doe," where did he say he bought the heroin, and did the police have any business trusting him? If Jolliff-Blake cannot keep his sworn testimony straight on these matters, it is a mistake to say the courts *must* accept the final, defense-friendly version of his testimony. Consistent with our pattern instructions, this case presents issues for trial, not summary judgment.

The majority's decision to accept Jolliff-Blake's explanations for his conflicting testimony and impeachment takes this court well outside the proper role for summary judgment. Maybe this fiasco of a search was the result of an honest but too-credulous officer's mistake in crediting "Doe." That's what my colleagues believe. But that's not our decision to make. Maybe we are just seeing a cover-up for the fiasco. The evidence also permits a reasonable inference that Jolliff-Blake's and Doe's defense-friendly account of any facts simply does not deserve to be believed. Plaintiffs' claims against Jolliff-Blake should be tried. To that extent, I respectfully dissent.