In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1318

JEFFERY A. LAWSON,

*Plaintiff-Appellant*,

*v.*

ROBERT VERUCHI, DETECTIVE, BADGE NO. 167,
named in his individual capacity, and
CITY OF ROCKFORD, an Illinois municipal corporation,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 08 C 50079—**Frederick J. Kapala**, *Judge.*

ARGUED SEPTEMBER 8, 2010—DECIDED JANUARY 28, 2011

Before POSNER, MANION, and HAMILTON, *Circuit Judges.*

MANION, *Circuit Judge.* Jeffery A. Lawson ("Jeffery A.")
was arrested for assaulting Kimberly Colvin and held
in jail for more than one month before he was re-
leased when police learned the alleged culprit was
really Jeffrey W. Lawson ("Jeffrey W."). Following his
release, Jeffery A. sued the officer who swore out his

arrest warrant, Rockford Police Detective Robert Veruchi, as well as the City of Rockford ("Rockford"), under 42 U.S.C. § 1983. Jeffery A. alleged that Veruchi arrested him without probable cause in violation of the Fourth Amendment, and Rockford violated his constitutional rights by not having policies in place to prevent such wrongful arrests. Jeffery A. also alleged pendent state law claims. The district court granted Veruchi and Rockford summary judgment on the § 1983 claims and then declined to exercise jurisdiction on the state law claims. Jeffery A. appeals. We reverse.

## I.

On June 9, 2007, Kimberly Colvin was in a Target store in Rockford, Illinois, with her friend Genesis Matthiesen, and Genesis's younger siblings Arcadia Matthiesen and Tony Franco. Inside the store, there was a verbal confrontation between Colvin and an unknown man and woman. Colvin decided it was best to leave the store, but as she and her friends got into her car in the Target parking lot, they discovered that the couple had followed them out. Colvin drove off, but at a stoplight she exited her vehicle, apparently in order to write down the couple's license plate number. After seeing the unknown man approaching her, Colvin tried to reenter her car, but as she did so, he slammed the car door on her head; Colvin suffered a long cut on one side of her face requiring 40 to 50 stitches.

The next day, Colvin reported the incident to a patrol officer in Rockford, describing the perpetrator as a white male in his 40s, about six feet tall and approxi-

mately 190 pounds. Colvin also informed the officer that her attacker drove a green vehicle and provided him with the license plate number which Arcadia had typed into her cell phone. The license plate was for a 2006 Saturn registered to a Donny Lawson in Rockford.

Detective Veruchi of the Rockford Police Department was assigned to follow up on Colvin's complaint. Veruchi called the Donny Lawson residence and Patsy Lawson, Donny's wife, informed Veruchi that the Saturn belonged to her son Jeffrey W. and that she would have him call Veruchi. Donny and Patsy Lawson's son "Jeffrey W." is not the innocent "Jeffery A." who is the plaintiff in this case—notice the different spellings of the name and different middle initials. We will use the different spellings and middle initials throughout the opinion to correctly identify the "Jeff" of whom we are speaking, but obviously when the actors in this case spoke of Jeffrey (or Jeffery) they did not specify the spelling of the name or the middle initial.

After speaking with Patsy, but before hearing from Jeffrey W., Veruchi received a telephone call from Frank Montalbano who was a courtroom bailiff in Rockford. Montalbano informed Veruchi that his daughter Stephanie was Jeffrey W.'s girlfriend and that Stephanie had told him that Jeffrey W. got into an altercation with someone around the Target store over the weekend. Montalbano stated that he would have his daughter and Jeffrey W. call him. About thirty minutes later, Jeffrey W. contacted Veruchi. After Veruchi asked Jeffrey W. whether he was willing to come to the police station to discuss the case, Jeffrey W. asked

how much trouble he was in. Veruchi told Jeffrey W. they could discuss that when they met and Jeffrey W. agreed to come in the following morning at 9:00 a.m. However, the next day Jeffrey W. left a message for Veruchi that he would not meet with him and that Veruchi should contact his attorney Jeff Heckinger if he had any questions.[1]

By this time, though, Veruchi had already arranged to conduct a photo array with Colvin and Arcadia. (It is unclear from the record why Veruchi did not arrange to show the photo array to Tony Franco or Genesis Matthieson.) To obtain a photograph of Jeffrey W., Veruchi searched the Winnebago County Jail system. The transcript of Veruchi's depositions and the defendants' statement of undisputed facts state that Veruchi looked up "Jeffrey Lawson" in the jail system. It appears that this is an inadvertent error on the defendants' part and that they meant to assert that Veruchi looked up "Jeffery Lawson" because that's whose photograph Veruchi put in the photo array, along with several other photographs of similar looking men.[2]

---

[1] Veruchi claims that he left a message for attorney Heckinger, but Jeffery A. claims that that is impossible because Veruchi's police report incorrectly identified Jeffrey W.'s attorney as Heckerson, and there is no attorney Heckerson in Rockford. Attorney Heckinger also denied receiving any message from Veruchi. Whether Veruchi ever called Heckinger, however, is irrelevant to the question on appeal.

[2] Apparently, Jeffery A. had a record and thus his photograph appeared in the Winnebago County Jail system.

At this point, what happened is disputed and because of the significance of the dispute, we provide a detailed description of the opposing versions of events, excerpting the relevant deposition testimony where helpful. According to Veruchi, after explaining the photo array procedures to Colvin, he placed six photos in front of her all at once. Veruchi maintains that Colvin identified Jeffery A. as the person who had assaulted her, signed the back of Jeffery A.'s photograph and initialed the photographs of the other individuals in the lineup. In his deposition, Veruchi testified that he showed the same photo lineup to Arcadia Matthieson, again laying all six photographs out on the table. Veruchi stated that at first Arcadia said she wasn't sure if she could identify the subject but that then she pointed to Jeffery A.'s photograph and said she was about 75 percent sure that he was the attacker. Veruchi claims that it was only about twenty seconds between the time Arcadia first looked at the photographs and her stating she was 75 percent sure that Jeffery A. was the attacker, and that during that time he did not say anything to Arcadia.

On the other hand, Colvin stated in her deposition that Veruchi presented her with a photo array of several individuals—more than six, she believed—and that she identified one of the individuals as the person who had attacked her, but that the individual she had identified was not Jeffery A. Colvin explained:

> [Veruchi] laid out the photos in front of me. Asked me to look over them carefully, seeing if any one of them caught my eye as the man that attacked me.

> I looked them over. I identified the one picture that looked exactly like the guy that attacked me that night. He asked me if I was sure if that was him, if I wanted to take more time and look over the rest of the photos again. Basically he laid them out one at a time again in front of me and kept saying, "Are you sure this is the guy?" We went through them maybe three of four times, and I told him that was the guy; and he said, "Maybe this will help you." He showed me another photograph of a woman who I immediately recognized and identified as the woman that was with him that night. He said that was the girlfriend of the man that attacked me. He flipped over one of the photos, and he said that was the boyfriend of her and asked me to go ahead and sign it; and I signed the photograph, assuming that that was the man that I had already picked out of the photos, not even thinking that it was a different, you know, photo. I guess I wouldn't understand why there would be a different photo chosen.

Upon further questioning, Colvin explained that while she had signed the back of Jeffery A.'s photograph, she had not seen the photograph she signed off on, as Veruchi "had already flipped it over and laid it out next to the girlfriend." And that at this point, Colvin added, Veruchi

> had the girlfriend's picture in front of me. Then he had all the photos flipped over. He had the one photo kind of lower than the others; and when I identified her, he pulled that photo over upside down and said that was the boyfriend of the girl and asked me to sign the back of it.

In her deposition, Colvin was then asked: "Looking through those photos in that exhibit, do you see there the photo you initially identified as the person who had done this to you?" And Colvin responded: "No."

Arcadia's mother also provided a signed declaration contradicting Veruchi's deposition testimony. Because Arcadia was a minor, her mother accompanied her to the police station and was present when Veruchi showed her the photo array. According to Arcadia's mother, Arcadia looked at the photographs and told Veruchi that she did *not* recognize the attacker in the photo array, and that for a period of five to ten minutes, Veruchi kept saying things like, "Are you sure you don't see him?" Again and again, Arcadia said that she could not identify the man from the photos. Finally, after Veruchi kept pushing, Arcadia selected one of the photos, although indicating she was only about 75 percent sure it was the attacker.

Veruchi's version of events was the one that he included in the affidavit he submitted in support of his application for an arrest warrant for Jeffery A. Lawson. Based on Veruchi's affidavit, a state judge issued a warrant for Jeffery A.'s arrest. On June 15, while driving to work, Jeffery A. was arrested. He remained in jail for 34 days until he was released on July 19 and all charges were dropped. (While being held in jail, Jeffery A. developed a staph infection, causing his leg to swell to twice its normal size.) It is unclear exactly how Jeffery A.'s misidentification was discovered, but it appears that an employee in the public defender's office knew Stephanie

and the Jeffrey W. she was dating and realized from the photograph of Jeffery A. that the wrong person had been arrested. The state's attorney's office informed Veruchi that there had been a misidentification and instructed him to continue investigating the crime. After Jeffery A.'s release, Arcadia's brother identified Jeffrey W. as the attacker. As of June 2008, Jeffrey W. has not been charged with the assault.

After his release, Jeffery A. sued Veruchi and Rockford under § 1983. Jeffery A. alleged that Veruchi arrested him without probable cause in violation of his Fourth Amendment rights and Rockford violated his constitutional rights by not having policies in place to prevent such wrongful arrests. Jeffery A. also included pendent state law claims. The district court granted Veruchi and Rockford summary judgment on the § 1983 claims and then declined to exercise jurisdiction on the state law claims. Jeffery A. appeals.

II.

On appeal, Jeffery A. argues that the district court erred in granting the defendants summary judgment. We review a grant of summary judgment *de novo*, viewing the facts in the light most favorable to the non-moving party, i.e., Jeffery A. *Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010). As noted above, Jeffery A. sued Veruchi for false arrest in violation of his Fourth Amendment rights. "In order to prevail on a claim of an arrest in violation of the Fourth Amendment, the plaintiff[] must show that [he was] arrested without probable cause;

probable cause is an absolute defense to such a claim." *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009). Probable cause exists if, at the time of the arrest, the facts and circumstances within the defendant's knowledge "are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008). Moreover,

> [w]hen a police officer, acting in good faith, obtains a warrant and acts within its scope, he has engaged in no official misconduct; it is the magistrate's responsibility to determine whether the officer's allegations constitute probable cause and it is the magistrate's error if the arrest is later determined to have been unlawful. In such a case, the magistrate's issuance of the warrant shields the officer from liability for the illegal arrest.

*Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir. 1985).

However, "a warrant does not erect an impenetrable barrier to impeachment of a warrant affidavit." *Id.* Rather,

> [i]f an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, not only is his conduct the active cause of the illegal arrest, but he cannot be said to have acted in an objectively reasonable manner.

*Id.*

In this case, Jeffery A. claims that he presented sufficient evidence that Veruchi knowingly included false statements in the arrest warrant affidavit and that without those false statements, probable cause was lacking to arrest him. We agree. While there was probable cause to believe that a man named "Jeffrey" (spelling unknown) Lawson had attacked Colvin, viewing the facts in the light most favorable to Jeffery A., there is absolutely no evidence that he was the "Jeffrey" Lawson who had attacked Colvin. Rather, if Colvin's deposition testimony is true, she did not identify Jeffery A. as the attacker, but had identified another individual. In turn, that would mean that Veruchi's arrest warrant application falsely stated that Colvin had identified Jeffery A. from the photo array. Submitting a knowingly false statement precludes reliance on an arrest warrant. *Id.*

On appeal, Veruchi continues to maintain that Colvin had in fact identified Jeffery A., pointing to Colvin's signature on the back of Jeffery A.'s photograph to support his version of the events. However, as detailed above, Colvin explained in detail how the photo array was conducted and if her story is true, Veruchi tricked Colvin into signing that photograph. Veruchi also points to Arcadia's identification of Jeffery A. as the attacker, but even assuming Arcadia had identified Jeffery A. as Veruchi claims (and not as her mother had claimed), Arcadia's identification merely indicated that she was 75 percent sure that Jeffery A. was the attacker. That would not support probable cause where the actual victim identified another individual as the attacker (as

Colvin stated in her deposition), absent some other evidence connecting Jeffery A. to the offense.[3]

The district court discounted Colvin's deposition testimony, concluding that she was probably upset that she had caused the wrong individual to be arrested and that she was thus trying to avoid any responsibility for Jeffery A.'s arrest. That might make a convincing closing argument, but that is a question for the jury, not the judge. The district court also found Jeffery A.'s theory incredible, positing that under Jeffery A.'s theory Veruchi was waiting for a chance to frame him and then jumped at it when another man with the same name was accused of committing a crime. But Jeffery A. claims a much more straightforward theory—that Veruchi thought that he was the attacker and was just trying to help the case along when the victim was unable to identify him. Jeffery A. also counters that Colvin's version of the events is much more likely than Veruchi's because Veruchi's version of the events would mean that two witnesses identified an innocent man—someone who even Veruchi admits does not look like Jeffrey W.—who amazingly had the same first and last name as the alleged attacker. It is not for us (any more

---

[3] Because Arcadia's identification does not provide a basis for probable cause in light of Colvin's deposition testimony, we need not decide whether the declaration submitted by Arcadia's mother was admissible. The defendants had moved to strike Arcadia's mother's declaration, but the district court denied the motion to strike as moot. On appeal, the defendants do not reassert their challenge to the declaration.

than it was for the district court), though, to judge the credibility of the competing versions—that is a question for the jury. What is for us to decide is whether, reading the evidence in the light most favorable to Jeffery A., Jeffery A. has presented sufficient evidence that Veruchi knowingly included false information in the arrest warrant application and that probable cause did not support the arrest. Colvin's deposition testimony, in which she unequivocally states that she did not identify Jeffery A. as her attacker, supports this conclusion. And if Veruchi had knowingly included this false information, then he also would not be entitled to qualified immunity because it was clearly established "that a warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003). *See Michael C. v. Gresbach*, 526 F.3d 1008, 1013 (7th Cir. 2008) ("If the right was 'clearly established,' the official is not entitled to qualified immunity from suit."). Accordingly, the district court erred in granting Veruchi summary judgment.

The district court also granted the City of Rockford summary judgment because it concluded that Jeffery A.'s underlying claim against Veruchi was without merit. However, as explained above, Jeffery A. presented sufficient evidence that Veruchi had knowingly included false information in the arrest warrant affidavit, thus justifying a trial on his claim against Veruchi. The City

of Rockford does not present any alternative argument for affirmance and we leave it to the district court to consider on remand whether Rockford is entitled to summary judgment on another basis. The district court also declined to exercise jurisdiction over Jeffery A.'s pendent state law claims because it had granted the defendants summary judgment on the federal claims. Accordingly, those claims likewise should be reconsidered on remand. Rule 36 shall apply on remand.

## III.

The deposition testimony in this case presents two starkly different versions of events. Given the procedural posture of this case, we must accept Colvin's version as true—which means that Colvin did not identify Jeffery A. as her attacker and that Veruchi falsely stated in the arrest warrant that she had. Accepting these facts as true, Jeffery A. has sufficiently stated a claim for false arrest under the Fourth Amendment and accordingly the district court erred in granting Veruchi summary judgment on this claim. Therefore, we REVERSE the grant of summary judgment to Veruchi. We likewise REVERSE the district court's grant of summary judgment to the City of Rockford, as that decision was premised on the failure of the claim against Veruchi. We REMAND pursuant to Rule 36 for further proceedings consistent with this opinion, and the dismissed state law claims should also be considered anew on remand.