In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 23-2574

DANIEL A. MADERO,

*Plaintiff-Appellant,*

*v.*

OWEN MCGUINNESS,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:20-cv-50062 — **Philip G. Reinhard**, *Judge.*

---

ARGUED FEBRUARY 22, 2024 — DECIDED APRIL 1, 2024

---

Before SYKES, *Chief Judge*, and RIPPLE and ST. EVE, *Circuit Judges*.

RIPPLE, *Circuit Judge*. At 4 a.m. on a snowy morning in Rockford, Illinois, Officer Owen McGuinness responded to a call that drivers involved in a hit-and-run accident were fighting. When he arrived at the scene, Officer McGuinness was faced with two different stories of the events that had transpired. Three witnesses insisted that Daniel Madero had been the driver of the hit-and-run vehicle and that, after a

confrontation, Mr. Madero had struck Brandon Philbee, the hit-and-run victim, in the face with a key. For his part, Mr. Madero asserted his innocence, denying that he was the driver of the hit-and-run car. He maintained that he had acted in self-defense against Philbee. It was, essentially, three against one. Confronted with the decision of whose story to credit, Officer McGuinness believed the three witnesses. He arrested Mr. Madero for aggravated battery for his fight with Philbee and issued him traffic citations for his role in the hit-and-run accident.

An investigation later in the day concluded that Mr. Madero's vehicle was likely not involved in the hit-and-run accident. An assistant state's attorney declined to press charges against Mr. Madero, and he was released from jail that evening. He then filed a complaint in federal district court against Officer McGuinness. His complaint set forth claims of false arrest in violation of the Fourth and Fourteenth Amendments. The district court granted summary judgment to Officer McGuinness because it determined that he had probable cause to arrest Mr. Madero. We hold that the district court correctly concluded that Officer McGuinness had probable cause to arrest Mr. Madero based on the information available to him at the time of the arrest. Accordingly, we affirm the judgment of the district court.

# I

# BACKGROUND

## A. Facts

The events in question occurred in the early morning hours of February 9, 2018, in Rockford, Illinois. There were four main witnesses and/or participants to the hit-and-run

accident and ensuing fight: Mr. Madero, Philbee, Daehler, and Keck.

The story unfolds as follows. As Philbee was driving through an intersection on a green light, his beige Pontiac SUV was struck on the front passenger side by the front bumper of a dark-colored sedan driving through a red light. Philbee saw the incoming car and shifted his car into neutral before impact. The contact forced him into oncoming traffic, where he collided with a GMC pickup truck, driven by Keck. The nearby driver of a white Ford pickup, Daehler, observed the accident. The dark-colored sedan fled the scene. All three of the other drivers—Philbee in his Pontiac and Daehler and Keck in their respective trucks—followed the dark-colored sedan as it drove away, leading them on a chase around several blocks.[1] The chase culminated back at the original intersection. Philbee, Daehler, and Keck surrounded a green Audi sedan waiting at the intersection with their vehicles, and Philbee got out of his car and walked up to the driver's side window of the Audi.

It is not disputed that the driver waiting at the intersection in his green Audi was Mr. Madero. Mr. Madero does dispute, however, that he was the driver of the dark-colored sedan involved in the hit-and-run accident. According to Mr. Madero, he was an innocent driver waiting at the intersection for the light to change when the three vehicles surrounded him and Philbee confronted him. But as the events of the morning

---

[1] The three disagreed slightly about the path they traveled. Although all agreed that they made three left turns and ended back at the original intersection, they disagreed about whether they first turned left onto Alpine Road (Philbee's testimony) or Point Avenue (Daehler's and Keck's testimony). These two roads are "a block apart." R.66-5 at 45.

continued, Philbee, Daehler, and Keck were operating under the belief that Mr. Madero and the driver of the dark-colored sedan were one and the same. They insisted, to each other and to police, that they had never lost sight of the dark-colored sedan as they chased it through the streets of Rockford.

Back to the scene. Philbee and Mr. Madero began arguing. Philbee accused Mr. Madero of the hit-and-run accident, and Mr. Madero denied involvement. At some point, Philbee reached inside the vehicle, and when the light turned green, Mr. Madero attempted to drive through the intersection. He was prevented from doing so by Daehler's truck and Keck's truck, each of which hit his Audi and sent it careening into a snowbank. Philbee, who had grabbed ahold of the steering wheel, ended up inside the vehicle, and began choking Mr. Madero. The fight between the two ended only when Officer McGuinness arrived at the scene.

Officer McGuinness observed the very end of the fight between Philbee and Mr. Madero. He saw that Philbee had blood dripping below his eye. Philbee and Daehler informed Officer McGuinness that Mr. Madero had stabbed Philbee with a key. Mr. Madero denied the accusation.

Soon two other officers arrived: Officer Swanson and Officer Nachampasack. The officers began their initial investigation. They divided the task of interviewing the witnesses amongst themselves as was their custom. Officer McGuinness interviewed Philbee, Officer Swanson interviewed Daehler and Keck, and Officer Nachampasack attempted to interview Mr. Madero. Mr. Madero, however, was too "out of sorts" to provide a statement at that time.[2] For their part, Daehler,

---

[2] R.66-3 at 27–28.

Keck, and Philbee insisted that they had never lost sight of the dark-colored sedan during the entire chase and that the dark-colored sedan was certainly Mr. Madero's green Audi. The officers communicated with each other at the scene after conducting their respective interviews.

Eventually, an ambulance arrived and transported Mr. Madero to the hospital for treatment of his injuries sustained during the fight with Philbee. Officer Nachampasack followed the ambulance and remained with Mr. Madero at the hospital. He obtained a statement from him there. Mr. Madero told Officer Nachampasack that he had been waiting innocently at the intersection when he was surrounded by the three vehicles and attacked by Philbee. Officer Nachampasack called Officer McGuinness and relayed this information. Officer McGuinness then spoke on the phone with an assistant state's attorney, who approved an aggravated battery charge against Mr. Madero. In doing so, the state's attorney relied on a probable cause statement prepared by Officer McGuinness, which summarized the police interviews with the witnesses and other evidence. Mr. Madero was then informed of the aggravated battery charge against him. He was also informed that he had been issued four traffic citations relating to the hit-and-run accident. He was taken to jail around 5 o'clock that morning.

A few hours later, at around 7:30 a.m., Daehler and Keck modified their original witness statements. According to Officer Swanson's police report, after the accident, Daehler and Keck began discussing the events of the morning with each other. They ultimately came to the joint conclusion that they were no longer certain that Mr. Madero's green Audi was the dark-colored sedan involved in the original hit-and-run

accident. They based this conclusion on the lack of damage to the front of the Audi; in their view, had the Audi hit Philbee's Pontiac with enough force to push it into Keck's truck, the front of the Audi should have reflected that sort of damage. It did not, and so the two informed law enforcement that they were no longer sure that the green Audi was the hit-and-run vehicle. They also admitted, contrary to their on-scene testimony, that they had not had their eyes upon the dark-colored sedan the entire time; at some point during the chase, Daehler was relying on his view of Philbee's Pontiac, and Keck was relying on his view of Daehler's truck.

Around that time, Assistant Deputy or Deputy Chief Pann contacted Detective DeVlieger, an accident investigator, and requested that he look into the morning's events.[3] Detective DeVlieger read the police reports and spoke with Daehler and Keck (who at this point had called police to modify their earlier statements). He also viewed Philbee's Pontiac and Mr. Madero's Audi. The Pontiac "had a lot of front-end passenger side damage," while "there was no evidence in [Detective DeVlieger's] opinion that [Mr. Madero's] vehicle was involved in a front-end collision."[4] Further, Philbee's vehicle showed evidence of paint transfer from a gray or white vehicle, rather than a green vehicle. Based on this evidence, Detective DeVlieger concluded that Mr. Madero's vehicle had not been involved in the initial hit-and-run accident.[5]

---

[3] It is not clear whether Chief Pann was the deputy chief or assistant deputy chief.

[4] R.73-3 at 6.

[5] It is not clear whether Officer McGuinness closely examined the supposed damage to the front end of the Audi from the hit-and-run accident

Mr. Madero was released from jail around 5 p.m. that evening after the State declined to charge him with aggravated battery. His traffic tickets were later dismissed.

## B. Prior Proceedings

Mr. Madero filed an action against Officer McGuinness in the United States District Court for the Northern District of Illinois in February 2020. His complaint set forth allegations that Officer McGuinness had violated his Fourth and Fourteenth Amendment rights by falsely arresting him the morning of February 9, 2018. After the parties conducted discovery, Officer McGuinness filed a motion for summary judgment.

The district court granted the motion. The court focused on the information available to Officer McGuinness and the other officers at the time of the arrest. Of particular importance to the court was that Officer McGuinness heard testimony from three "very adamant" witnesses who each "said the same thing." *Madero v. McGuinness*, No. 20-cv-50062, at *5 (N.D. Ill. June 27, 2023). "In short, it was three witnesses against one." *Id.* The court explained that the officers had enough information available to them at the scene of the accident to establish probable cause to arrest Mr. Madero for aggravated battery. *Id.* at *6.

The district court found Mr. Madero's arguments to the contrary to be unpersuasive. First, although Mr. Madero highlighted conflicting testimony on whether Philbee "jumped" or

---

prior to Mr. Madero's arrest. His report stated that he "observed the green Audi had front end damage," but that he "was unable to see any visible paint transfer from the vehicles due to the heavy snow storm." R.73-1 at 8. At his deposition, however, Officer McGuinness was unable to recall the damage he saw that led to this statement in his report.

"fell" into the Audi, the court "[did] not believe this discrepancy [wa]s material" and found that it was "not especially surprising that witnesses might have described this movement in slightly different ways given that it occurred at the end of a fairly complicated sequence of events." *Id.* at *6–7. Second, the court rejected Mr. Madero's argument concerning Philbee's disagreement with Daehler and Keck on the exact path taken during the chase. In the court's view, because the witnesses were "adamant … that they never lost sight of the vehicle," Officer McGuinness could have reasonably concluded "this discrepancy about the exact road taken to be an inconsequential mistake made by one of these witnesses." *Id.* at *7. Third and finally, the district court considered Mr. Madero's argument regarding the lack of damage to the front of his vehicle. This argument failed, too. In the district court's view, Detective DeVlieger's conclusion that Mr. Madero's vehicle was not the hit-and-run vehicle because it did not have the expected damage assumed that the hit-and-run vehicle had been traveling the posted speed limit. But the court pointed to Philbee's testimony that the hit-and-run vehicle had slowed its speed down significantly and "barely bumped" Philbee's car. *Id.* at *8 (quoting R.66-4 at 19). Although the court recognized that Philbee may not have been a credible witness, it ultimately determined that Philbee's theory was not "completely implausible." *Id.*

In closing, the court concluded that "there was enough evidence at the time of the initial investigation to meet the lower probable cause standard for both the aggravated battery charge and for the four traffic violations," and granted summary judgment to Officer McGuinness. *Id.* at *9.

## II

## DISCUSSION

We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party, here Mr. Madero. *Lawson v. Veruchi*, 637 F.3d 699, 703 (7th Cir. 2011). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Abbott v. Sangamon Cnty., Illinois*, 705 F.3d 706, 713 (7th Cir. 2013).[6]

A plaintiff seeking to prevail on a claim of false arrest must show that he was arrested without probable cause because "probable cause is an absolute defense to such a claim." *Lawson*, 637 F.3d at 703 (quoting *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009)). The burden of demonstrating a lack of probable cause belongs to the plaintiff. *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009). Although the jury typically determines whether an arrest was supported by probable cause in a Section 1983 false-arrest case, the court may make that decision on summary judgment if the underlying facts are undisputed. *Abbott*, 705 F.3d at 714.

---

[6] We note that the district court conducted no separate analysis of Mr. Madero's claim that his false arrest was a violation of his due process rights under the Fourteenth Amendment. Rightfully so. Claims for false arrest prior to trial are appropriately considered under the Fourth Amendment, not the Fourteenth Amendment. *Manuel v. City of Joliet, Illinois*, 580 U.S. 357, 367 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly lies in the Fourth Amendment."); *Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019) ("It's now clear that a § 1983 claim for unlawful pretrial detention rests *exclusively* on the Fourth Amendment.").

An officer has probable cause when, "at the time of the arrest, the facts and circumstances within the defendant's knowledge 'are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed … an offense.'" *Lawson*, 637 F.3d at 703 (quoting *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008)). "The existence of probable cause … depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law." *Doe v. Gray*, 75 F.4th 710, 719 (7th Cir. 2023) (quoting *Abbott*, 705 F.3d at 715); *see also Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). Mr. Madero was charged with aggravated battery under Section 12.305(c) of the Illinois Criminal Code. Illinois law provides that "[a] person commits battery if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3. A battery charge may be elevated to an aggravated battery charge when the person committing battery, or the person battered, is on or about a public way. 720 ILCS 5/12-3.05(c).

Our inquiry into probable cause "is limited to what the officer knew at the time of the arrest." *Harney v. City of Chicago*, 702 F.3d 916, 922 (7th Cir. 2012). We therefore consider only the information available to Officer McGuinness prior to his 5 a.m. arrest of Mr. Madero. We hold that Officer McGuinness had probable cause to arrest Mr. Madero.

When he arrived at the scene, Officer McGuinness was informed by three witnesses that Mr. Madero was the driver of a hit-and-run vehicle. Two of those witnesses insisted that he had struck Philbee in the face with a key. Mr. Madero

disputed both assertions. It was the word of three witnesses against one.[7] At the scene, the only evidence supporting Mr. Madero's claim that he was uninvolved in the hit-and-run accident, other than his own testimony, was the lack of front-end damage to his car. But none of the officers nor any of the witnesses brought up the lack of damage to the front of Mr. Madero's car. Furthermore, it was snowing heavily that night, so much so that "[i]t would have been almost impossible" for the tow truck drivers to clean up accident parts from the intersection.[8] In such a situation, we cannot say that Officer McGuinness's failure to investigate the damage to Mr. Madero's car dispelled probable cause. *See Seiser v. City of Chicago*, 762 F.3d 647, 654 (7th Cir. 2014) ("The general rule is that when the police have information from a reasonably credible witness that a person has committed a criminal act, they may rely on that witness's account, even when the suspect himself denies wrongdoing. The police need not exhaust all available avenues of investigation, including those that might potentially exculpate the suspect.") (internal citation omitted); *Matthews v. City of East St. Louis*, 675 F.3d 703, 707 (7th Cir. 2012) ("[O]nce probable cause has been established, officials have 'no constitutional obligation to conduct further investigation in the hopes of uncovering potentially

---

[7] The existence of probable cause does not depend on whether Officer McGuinness correctly credited Philbee's, Daehler's, and Keck's testimony over Mr. Madero's. *Braun v. Village of Palatine*, 56 F.4th 542, 549 (7th Cir. 2022) ("There is no requirement that 'the officer's belief be correct or even more likely true than false, so long as it is reasonable.'") (quoting *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999)).

[8] R.66-5 at 57.

exculpatory evidence.'") (quoting *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999)).

Of course, although an officer is not required to search vigorously for exculpatory evidence, at the same time, an officer may not ignore conclusively established exculpatory evidence. *Dollard v. Whisenand*, 946 F.3d 342, 355 (7th Cir. 2019); *McBride*, 576 F.3d at 707 ("An officer … may not close his eyes to facts that would clarify the situation."); *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004).[9] Our precedent simply imposes upon the arresting officer the duty to act in a reasonable fashion and not to take an ostrich-like approach to exculpatory evidence that is obvious in nature and weakens substantially the relevance and probative value of the evidence suggesting guilt. We need not examine the

---

[9] Our colleagues in some of the other circuits have had occasion to acknowledge that an arresting officer, in assessing the existence of probable cause, cannot fail to acknowledge and to take into consideration *obvious* exculpatory evidence that casts a dark cloud on the reliability of other evidence suggesting guilt. *See Harvard v. Cesnalis*, 973 F.3d 190, 200 (3d Cir. 2020) ("In determining probable cause, arresting officers must consider *plainly* exculpatory evidence in addition to inculpatory evidence. This is true 'even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists.'") (emphasis added) (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)); *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008) ("Exculpatory evidence is … relevant to whether an officer has probable cause. Officers are not required to conduct a 'mini-trial' before arrest, but probable cause 'does not exist when a "minimal further investigation" would have exonerated the suspect.'") (quoting *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999)); *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000) ("[A]n officer cannot look only at evidence of guilt while ignoring all exculpatory evidence. Rather, the officer must consider the totality of the circumstances, recognizing both the inculpatory *and* exculpatory evidence, before determining if he has probable cause to make an arrest.").

contours of this exception. Here, we think that it is clear that Officer McGuinness was not obliged, in the face of the eyewitness testimony before him and the evidence of a bleeding victim, to conduct a crash investigation in the middle of a snowstorm in the early hours of the morning. In short, exculpatory evidence available through a detailed examination of the exterior of the vehicles was not obviously available to the officer.

Mr. Madero raises a number of other arguments supporting his view that Officer McGuinness lacked probable cause. He submits that genuine disputes of material fact exist that prevent us from deciding the case on summary judgment. We disagree. No underlying facts supporting the probable cause determination are in dispute. Even viewing the facts in the light most favorable to Mr. Madero, and therefore assuming that he was not the driver of the hit-and-run vehicle and that he did not strike Philbee in the face with a key, Officer McGuinness still had probable cause to arrest Mr. Madero. As we have explained, Officer McGuinness was informed by three seemingly credible witnesses that Mr. Madero did in fact flee the scene of the accident. He also observed blood dripping from a large cut on Philbee's face and heard from both Philbee and Daehler that Mr. Madero had struck Philbee in the face with his key. That Officer McGuinness heard such testimony and saw Philbee's face is not in dispute, and he reasonably relied on such information to arrest Mr. Madero.

Two of Mr. Madero's remaining arguments generally stem from law enforcement's decision to split the task of interviewing the four witnesses between the three officers at the scene of the accident. Mr. Madero highlights conflicting testimony and suggests that had Officer McGuinness interviewed

each witness himself, he would have realized the conflicts. First, Mr. Madero points to the discrepancy between Philbee's statement that he "fell" into Mr. Madero's vehicle, and Daehler's and Keck's statements that Philbee "jumped" into Mr. Madero's vehicle. This is an important distinction, Mr. Madero contends, because it goes directly to his assertion of self-defense. He also points out that Philbee, Daehler, and Keck disagreed about the path they took while chasing the hit-and-run vehicle.

These arguments fail. These slight disagreements in testimony did not dispel probable cause. First, Officer McGuinness had no duty to investigate the validity of Mr. Madero's claim of self-defense, which was far from conclusively established. Moreover, as the district court recognized, the disagreement between Philbee, Daehler, and Keck about the path traveled during the chase did not dispel Officer McGuinness's probable cause. At the scene, all three were "adamant" that they did not lose sight of the dark-colored sedan, and all three arrived back at the intersection, surrounding Mr. Madero's car, at the same time. The slight disagreement about the path taken is insubstantial in light of the trio's insistence in the immediate aftermath that they had maintained sight of the dark-colored sedan the entire chase.

Nor was probable cause for the arrest eliminated because Daehler and Keck later recanted their statements that they had never lost sight of the hit-and-run car. As we have explained, we look only to information available to the officer at the time of the arrest when determining whether probable cause existed. Additional evidence discovered later "is irrelevant to whether probable cause existed at the crucial time" of the arrest. *Braun v. Village of Palatine*, 56 F.4th 542, 549 (7th Cir.

2022) (quoting *Bailey v. City of Chicago*, 779 F.3d 689, 695 (7th Cir. 2015)). The accident occurred around 4 a.m., Mr. Madero was arrested around 5 a.m., and Daehler and Keck did not recant their statements until 7:30 a.m. that morning. Their recantations, therefore, do not affect the existence of probable cause.

Because we hold that Officer McGuinness had probable cause to arrest Mr. Madero, we need not reach the question of whether Officer McGuinness was entitled to qualified immunity.

## Conclusion

Ultimately, Officer McGuinness credited the testimony of three consistent—and "very adamant"—witnesses over the testimony of one witness telling a different story. His decision to arrest Mr. Madero on the basis of the testimony of those three eyewitnesses was supported by probable cause, and we therefore affirm the district court's grant of summary judgment to Officer McGuinness.

AFFIRMED