In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 24-1053

SHAWNQIZ LEE,

*Plaintiff-Appellant,*

*v.*

ERIC HARRIS, BRANDON POFELSKI and CITY OF ROCKFORD, ILLINOIS,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:21-cv-50199 — **Iain D. Johnston**, *Judge.*

———————

ARGUED NOVEMBER 12, 2024 — DECIDED JANUARY 27, 2025

———————

Before SYKES, *Chief Judge*, and BRENNAN and ST. EVE, *Circuit Judges.*

BRENNAN, *Circuit Judge*. Shawnqiz Lee was detained and charged as a murder suspect. Over a year later the charges were dismissed, and he was released. Lee filed a variety of § 1983 claims, asserting the police arrested and imprisoned him without probable cause. But the existence of probable cause is presumed because Lee was arrested and detained

based on an arrest warrant issued by a neutral magistrate and a grand jury indictment. Because Lee has not rebutted those presumptions, we affirm the district court's grant of summary judgment to the police officers.

## I. Background

In February 2018, two men invaded a home in Rockford, Illinois in which Julian Young, Jr. and Jasmine Meneweather were living. Meneweather escaped, but the assailants killed Young. Rockford police officers interviewed Meneweather immediately after the attack. She gave general descriptions of the two perpetrators but could not provide their photos or names.

During their investigation, officers learned that Meneweather may have been romantically involved with the purported driver of the assailants' getaway car. Specifically, officers listened to a recorded jail phone call in which Young's brother said Meneweather had sexual relations with the driver. Based on this development, officers decided to re-interview Meneweather. Shortly after the second interview, she sent Detective Eric Harris a text message, providing a photo of one of the perpetrators. Neither Harris nor other Rockford police offers could identify the person in the photograph, so no further action was taken.

Over a year later, in April 2019, Harris met with Young's aunt, who gave him a photo identifying the two assailants. She told Harris the two men in the photo were brothers. Another officer recognized one of the men as Cortez Lee, and

Harris eventually identified the second man as Cortez's brother, Shawnqiz Lee.[1]

Illinois State Police were also involved in the murder investigation. In August 2019, they issued a lab report concluding that fingernail clippings taken from Young's body during the autopsy contained DNA from an unknown person. That same month, Harris invited Meneweather to the police station to view photo arrays. Brandon Pofelski, another Rockford detective, met with Meneweather to present them. He had not been involved in the investigation up to that point. Meneweather was advised that the suspect may or may not be in the arrays. Pofelski then showed her two six-person photo arrays—one included Cortez and the other included Lee.

Meneweather recognized Lee thirteen seconds after viewing the first array. After identifying him, she "was visibly shaking and emotional." Police interviewed Lee five weeks after the identification. He told the officers he was at work at the time of the home invasion, but police did not attempt to corroborate his alibi until after his arrest.

In November 2019, Winnebago County State's Attorney Marilyn Hite Ross requested that the Rockford police put together a criminal complaint against Lee. Pofelski drafted the complaint charging Lee with home invasion and Young's murder. After obtaining Hite Ross's approval, the complaint was presented to an Illinois judge. Pofelski testified about Meneweather's identification and the unprocessed DNA sample taken from Young's fingernails. But Pofelski did not testify

---

[1] Although Shawnqiz and Cortez share a last name, we refer to Shawnqiz as "Lee" for the remainder of this opinion.

about Lee's possible alibi or Meneweather's reliability. The judge issued an arrest warrant for Lee, and Rockford police arrested him the same day.

A week after his arrest, two of Lee's family members met with Rockford police and produced his timecard from his workplace. It showed Lee had clocked in about 45 minutes before the first 911 call on the day of the murder. Police went to the workplace and spoke to Lee's supervisor, who confirmed the timecard was authentic. The supervisor told police that it was not possible for Lee to have been gone or unaccounted for at the time of the crime. Police requested video from his workplace's surveillance system for that day, but due to a failure no footage was available. The officers informed Hite Ross of Lee's potential alibi and their follow-up investigation. They then prepared a written report of the interview of Lee's supervisor and placed the timecard in evidence, providing copies of both to Hite Ross.

In December 2019, Harris testified before a grand jury. It returned an indictment charging Lee with first-degree murder and armed robbery.

Two weeks later, the Illinois State Police issued a lab report that concluded Lee's DNA did not match the DNA found under Young's fingernails. The prosecution disclosed this report to Lee. He then sought release from pretrial custody, citing as evidence the timecard and the DNA report. The judge denied the motion.

In December 2020, the newly elected State's Attorney reviewed the case against Lee and decided to dismiss the charges against him. Lee was released from custody after being held for just over thirteen months.

After his release Lee sued Harris and Pofelski, among others, alleging they violated his Fourth Amendment rights against unlawful arrest and detention. He also alleged the officers maliciously prosecuted him, violating both the Fourth Amendment and Illinois law. The district court granted summary judgment to the officers. It reasoned that probable cause, which the officers had after Meneweather's identification, is an absolute defense to all of Lee's claims. This appeal followed.

## II.  Discussion

We review a court's grant of summary judgment de novo, "construing the evidence in the light most favorable to the non-moving parties and drawing all reasonable inferences in their favor." *Navratil v. City of Racine*, 101 F.4th 511, 518 (7th Cir. 2024). Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Probable cause "is an absolute defense" to Lee's § 1983 claims. *Madero v. McGuinness*, 97 F.4th 516, 522 (7th Cir. 2024) (quoting *Lawson v. Veruchi*, 637 F.3d 699, 703 (7th Cir. 2011)) (analyzing a false arrest claim). So, he carries the burden of demonstrating that police lacked probable cause to arrest and detain him. *Id.*

When a neutral magistrate issues an arrest warrant, "we presume the validity of the warrant and the information offered to support it." *Johnson v. Myers*, 53 F.4th 1063, 1068 (7th Cir. 2022) (quoting *Dollard v. Whisenand*, 946 F.3d 342, 354 (7th Cir. 2019)). A plaintiff can rebut this presumption in a couple of ways. The plaintiff may show that "the warrant application was 'so lacking in indicia of probable cause as to render

official belief in its existence unreasonable.'" *Id.* at 1069 (quoting *Whisenand*, 946 F.3d at 354). The presumption can also give way if the plaintiff shows "that the officer who sought the warrant knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer, and that the false statements were necessary to the judicial officer's determination that probable cause existed." *Id.* (quoting *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010)) (internal quotations omitted). Omissions are included in this category, such as when the "officer intentionally or recklessly withheld material facts from the warrant-issuing judge." *Id.* These "exceptions are narrowly drawn by design." *Id.*

Similarly, a grand jury "indictment is prima facie evidence of probable cause." *Coleman v. City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019). To overcome this presumption, a plaintiff must advance "evidence that law enforcement obtained the indictment through improper or fraudulent means." *Id.* In other words, he must show "defendants knew they lacked probable cause to arrest him." *Id.*

## A. False Arrest Claims

Lee initially takes aim at the presumption of the arrest warrant's validity. He contends that Meneweather's identification of him was insufficient to establish probable cause, and thus that any conclusion of probable cause was unreasonable. But our court has held repeatedly that a single eyewitness identification is enough to provide a defense against Fourth Amendment claims. *Gramenos v. Jewel Cos.*, 797 F.2d 432,

439-40 (7th Cir. 1986); *see also McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009).

*Gramenos* is instructive. There, a supermarket security guard held a customer he mistakenly thought was shoplifting until police arrived. 797 F.2d at 433–34. The guard was the sole eyewitness to the crime and the state's only witness at trial. *Id.* at 434. The customer brought a § 1983 claim against the police for his arrest. *Id.* In affirming summary judgment for the officers, this court concluded that "one reliable eyewitness is enough" to give the police probable cause to arrest. *Id.* at 440. Indeed, "a single eyewitness's statement—without further investigation or a narration of contrary evidence—can support a warrant." *Id.*; *see also Moorer v. City of Chicago*, 92 F.4th 715, 721 (7th Cir. 2024) ("[I]dentification by even one eyewitness who lacks an apparent grudge against the accused person is sufficient to demonstrate probable cause.").

*Gramenos* is distinguishable, Lee argues, because Meneweather's photo-array identification occurred over a year after Young's murder. True, the court in *Gramenos* cautioned that probable cause may not exist "if the person claiming to be an eyewitness strolls into the police station and describes a crime from long ago, or if the person leveling the accusation is babbling or inconsistent." *Id.* at 439. But Meneweather provided a photo of Lee to Harris in March 2018, just weeks after the murder. After Meneweather's later identification in September 2019, officers ensured the person she identified in the photo array matched the photo she initially produced. So, this is not an instance where a random eyewitness "stroll[ed] into the police station and describe[d] a crime from long ago," but rather a putative victim identifying a perpetrator in a timely manner. *Id.*

Because there was no reason for the judge to question Meneweather's identification, the application was not "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Id.* (quoting *Whisenand*, 946 F.3d at 354). Lee's challenge on this front fails.

This presumption can also be overcome by showing that the officers recklessly withheld material facts which, if included in the warrant application, "would have negated probable cause." *Whitlock*, 596 F.3d at 411. When considering materiality, this court has emphasized "that probable cause is a common-sense inquiry requiring only a probability of criminal activity." *Id.* A § 1983 plaintiff must show that the "misleading omissions were collectively a but-for cause of the judicial determinations of probable cause to detain" him. *Washington v. City of Chicago*, 98 F.4th 860, 873 (7th Cir. 2024).

Lee identifies five categories of evidence he argues were recklessly withheld from the judge. First, he contends his alibi—that he was at work during the time of the murder—should have been disclosed at the warrant hearing. But at the time of the warrant application, Rockford police had only Lee's oral assertion that he was at work. Not until the following week did his relatives provide his timecard.

Unsurprisingly, "criminal suspects frequently protest their innocence." *Beauchamp v. City of Noblesville*, 320 F.3d 733, 744 (7th Cir. 2003). A bare "denial of guilt generally is not enough to trigger a duty to investigate in the face of a reasonably believable witness and readily observable events." *Id.* Further, police are not required to thoroughly investigate a suspect's alibi before an arrest. *Jackson v. City of Peoria*, 825 F.3d 328, 330 (7th Cir. 2016). Thus, Pofelski was under no obligation to investigate or disclose Lee's alibi to the judge.

Second, Lee asserts that authorities should have disclosed his lack of prior connections with either victim before the home invasion. He cites no authority for how this information would be relevant, much less material, to the probable cause analysis. And we have found no cases providing that lack of prior knowledge defeats probable cause.

Third, Lee submits that police did not tell the judge that the photo array identification occurred over a year after the murder. But as discussed above, Meneweather provided Lee's photo to Detective Harris just weeks after the home invasion. Lee is therefore not correct that the delay reduced the reliability of Meneweather's identification.

Fourth, Lee notes that Meneweather first estimated the suspect to weigh forty pounds more than Lee. But inconsistencies "between a witness's description and an officer's observation of the suspect are not unusual and do not automatically negate probable cause." *Muhammad v. Pearson*, 900 F.3d 898, 909 (7th Cir. 2018) (holding that a difference of a few years in age and three inches in height did not negate probable cause). Indeed, probable cause is based only on "reasonableness, not perfection." *Id.* (quoting *Pasiewicz v. Lake Cnty. Forest Pres. Dist.*, 270 F.3d 520, 524 (7th Cir. 2001)). And a warrant application need not "include all information, or even all inconsistencies, discovered in a preliminary investigation." *Garcia v. Posewitz*, 79 F.4th 874, 881 (7th Cir. 2023).

Fifth, Lee argues the police should have disclosed Meneweather's possible credibility issues. Her identification was not reliable, he posits, due to a possible sexual relationship with the purported getaway driver. Of course, if "officers entertained serious doubts as to the truth of their statements, [or] had obvious reasons to doubt the accuracy of the

information reported," that is enough to negate probable cause. *Edwards v. Jolliff-Blake*, 907 F.3d 1052, 1061 (7th Cir. 2018) (quoting *Beauchamp*, 320 F.3d at 743). Yet it is not enough for a § 1983 plaintiff to show merely that "a judge or jury could choose to disbelieve the witness[]"—that is a question for trial. *Moorer*, 92 F.4th at 722.

There is no evidence that the Rockford police entertained "serious doubts" about Meneweather's reliability at the time of the arrest warrant. So, instead, Lee falls back on speculation as to the officers' states of mind. Specifically, he argues that police had serious doubts about Meneweather's truthfulness because they re-interviewed her after finding multiple intimate text conversations on her phone with an unidentified person. But although police may have harbored suspicion of bias before re-interviewing Meneweather, further investigation did not confirm doubts about her reliability. Lee's assertion that the officers "clearly" possessed doubts about Meneweather's veracity is therefore unsubstantiated "conjecture," which "will not overcome the presumption that the arrest warrant was valid." *Johnson*, 53 F.4th at 1070.

Moreover, the officer whose testimony Lee relies on to demonstrate "serious doubt" became aware of the case only in August 2020, nearly a year after the arrest warrant issued. But this is irrelevant for a probable cause determination. We consider only "what the officer knew at the time he sought the warrant, not at how things turned out in hindsight." *Washington*, 98 F.4th at 875 (quoting *Beauchamp*, 320 F.3d at 743).

Lee makes a last-ditch effort to speculate about the officers' frame of mind, claiming we can infer doubt from a two-month gap between the photo array identification and the issuance of the arrest warrant. He did not, nor could he,

cite any authority for the proposition that police must pursue an arrest warrant as soon as they obtain probable cause. Executive officials enjoy substantial discretion in how they conduct investigations. *See, e.g., In re United States*, 503 F.3d 638, 641 (7th Cir. 2007). It would thus be improper for us to impose an artificial requirement that they must seek an arrest warrant as soon as the bare minimum for probable cause is met.

There are no facts, individually or in the aggregate, to overcome the "'great deference' [owed] to the issuing judge's 'determination of probable cause.'" *Johnson*, 53 F.4th at 1069 (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). Lee's false arrest claim accordingly fails.

### B. *Manuel* **Claim**

Even if police had probable cause to arrest him, Lee contends additional facts arose later in the investigation to make his continued detention unlawful. A plaintiff can pursue a Fourth Amendment claim "even beyond the start of legal process." *Manuel v. City of Joliet*, 580 U.S. 357, 369 (2017). If an individual's initial detention is proper but probable cause dissipates before his release, a constitutional claim exists for any detention until he "is either convicted or acquitted." *Kuri v. City of Chicago*, 990 F.3d 573, 575 (7th Cir. 2021).

But the grand jury's indictment, obtained while Lee was detained, is prima facie evidence of probable cause. *Coleman*, 925 F.3d at 351. Plaintiffs can overcome this presumption only by showing "that law enforcement obtained the indictment through improper or fraudulent means," and they "knew they lacked probable cause to arrest." *Id*.

As discussed above, Lee cannot show the defendants knew they lacked probable cause when the warrant issued.

And the grand jury issued its indictment not even one month after Lee's arrest. The only additional evidence police obtained between those two events was Lee's timecard. The officers immediately followed up with Lee's manager, who confirmed the timecard's authenticity and that Lee could not have been gone from work or unaccounted for at that time.

But, despite their requests, the officers were unable to obtain video of Lee at work during that time. And after reading the officers' report on the interview, Hite Ross said she was familiar with suspects creating fraudulent records. So, the record undercuts the claim that Rockford police ignored "conclusively established exculpatory evidence." *Madero*, 97 F.4th at 523. Rather, the investigation shows the officers did what our precedent requires—"to act in a reasonable fashion and not to take an ostrich-like approach to exculpatory evidence that is obvious in nature." *Id.* The timecard, while it would have supported Lee's defense at a trial, did not undermine probable cause. Indeed, "there is a meaningful distinction between *disregarding* potentially exculpatory information and *disbelieving* it." *Whisenand*, 946 F.3d at 355 (quoting *Mahnke v. Garrigan*, 428 F. App'x 630, 635 (7th Cir. 2011)). Lee makes no persuasive argument that the police decided to disregard the timecard, as opposed to question its veracity. Accordingly, Lee has not overcome the presumption that the arrest warrant was valid. Nor has he shown that law enforcement obtained the indictment through improper or fraudulent means. So, he has not defeated the presumption of probable cause.[2]

---

[2] It is also relevant that the officers "consulted with" Hite Ross when deciding whether to pursue the arrest warrant. *See Johnson*, 53 F.4th at 1070 n.2. The State's Attorney requested and approved the warrant application. Hite Ross did not conduct her "own independent fact-gathering" before

After the indictment, the sole additional fact that could have eliminated authority to detain him was the Illinois State Police report, which found the DNA under Young's nails did not match Lee's DNA. Although this report failed to confirm that Lee was at the crime scene, it did not conclusively exclude him from it. There was no evidence that Young touched the perpetrator, so there was no reason to believe the DNA under his fingernails was from one of the perpetrators. The report therefore does not render probable cause unreasonable, as the standard requires "only a probability of criminal activity." *Whitlock*, 596 F.3d at 411. At the pretrial detention stage, the officers need not "have evidence beyond a reasonable doubt that [Lee] committed the crime." *Moorer*, 92 F.4th at 722. Although the lack of a DNA match would have been a good "argument[] at trial," it does not negate probable cause. *Id.*

### C. Malicious Prosecution Claims

In addition to his Fourth Amendment unlawful detention claims, Lee brought federal and state malicious prosecution claims against the officers. A malicious prosecution claim under the Fourth Amendment requires a plaintiff to demonstrate that (1) the judicial proceeding was instituted without probable cause; (2) the motive for the proceeding was malicious; and (3) the prosecution ended in the plaintiff's favor. *Thompson v. Clark*, 596 U.S. 36, 44 (2022). The elements for an Illinois state-law malicious prosecution claim mirror those federal requirements. *See Martinez v. City of Chicago*, 900 F.3d 838, 849 (7th Cir. 2018) (citing *Howard v. Firmand*, 880 N.E.2d

the application, so her approval does not serve as an independent dispositive basis to support probable cause. *Washington*, 98 F.4th at 873. Nonetheless, her approval bolsters the defendants' assertion that they acted reasonably.

1139, 1142 (Ill. App. Ct. 2007)); *Miller v. Rosenberg*, 749 N.E.2d 946, 952 (Ill. 2001).

The existence of probable cause therefore also serves as a defense against both federal and state-law malicious prosecution claims. *Martinez*, 900 F.3d at 849; *see also Washington*, 98 F.4th at 878. Lee identifies no facts beyond those discussed above that would eliminate probable cause at any stage of the proceedings. Although the prosecution "ended without a conviction," the government here never lacked the minimum evidence needed to pursue the indictment. *Thompson*, 596 U.S. at 49. The district court was thus correct to grant summary judgment on the malicious prosecution claim.[3]

*          *          *

Probable cause is an absolute defense against Lee's Fourth Amendment and state-law claims. Because it existed here, the judgment of the district court is AFFIRMED.

---

[3] Because we hold that the defendants here committed no legal violations, we need not reach the issue of qualified immunity. *See Madero*, 97 F.4th at 524.